**Bonnie STEPHENSON, Appellant,**

v.

**FURNAS ELECTRIC COMPANY and Liberty Mutual Insurance Company, Appellees.**

No. 93–1366.

Supreme Court of Iowa.

Oct. 19, 1994.

Steven C. Jayne, Des Moines, for appellant.

Joseph S. Cortese II of Jones, Hoffmann, Huber, Kelley, Book & Cortese, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This is an appeal from a decision of the district court sitting on review of agency action in a workers' compensation claim. We affirm.

Appellant Bonnie Stephenson had been employed by Furnas Electric Co. (Furnas) in 1984 and again from 1986 to 1990. Her job responsibilities initially involved assembling and setting industrial switches. Beginning in December 1988 she developed a number of repetitive motion disorders (carpal, cubital, and ulnar tunnel syndromes), and underwent surgery for these conditions in 1989. After the operation she worked in different departments of Furnas, but the work continued to aggravate her condition. Her physician eventually prescribed permanent duty limitations, involving weight restrictions and absence of repetitive activities, but Furnas did not have work available to meet these requirements. She has been unable to find work within the restrictions prescribed by her physician. She continues to suffer from pain, and has difficulty doing even most basic household duties. Bonnie was given permanent impairment ratings of eight percent for the right upper extremity, and six percent of the left upper extremity.

After Bonnie applied for workers' compensation benefits, the deputy industrial commissioner held she was entitled to some, but not all of them. On her appeal the industrial commissioner affirmed in part, but reduced the award for permanent partial disability. The matter is before us on Bonnie's appeal from a district court decision affirming the commissioner.

■■■ I. Our review of agency action under Iowa Code section 17A.19(8) (1993) is to determine whether our conclusions are the same as those of the district court. *Teleconnect Co. v. Iowa State Commerce Comm'n,* 404 N.W.2d 158, 162 (Iowa 1987). The district court, and we, accord only limited deference to the agency's interpretation of law, including statutory and agency rule interpretations. *Norland v. Iowa Dep't of Job Serv.,* 412 N.W.2d 904, 908 (Iowa 1987). Our review of factual findings is greatly more circumscribed; we uphold the decision of the agency if it is supported by substantial evidence, when the record is viewed as a whole. *Fernandez v. Iowa Dep't of Human Servs.,* 375 N.W.2d 701, 705 (Iowa 1985). We are not free to interfere with any agency finding where there is a conflict in the evidence or when reasonable minds might disagree about the inference to be drawn from the evidence, whether it is disputed or not. *Ward v. Iowa Dep't of Transp.,* 304 N.W.2d 236, 239 (Iowa 1981).

■■■ This is not to say we never interfere; the agency's decision cannot be unreasonable or involve an abuse of discretion. Unreasonableness is defined as action in the face of evidence as to which there is no room for difference of opinion among reasonable minds, or not based on substantial evidence. *Frank v. Iowa Dep't of Transp.,* 386 N.W.2d 86, 87 (Iowa 1986). Abuse of discretion is synonymous with unreasonableness, and involves lack of rationality, focusing on whether the agency has made a decision clearly against reason and evidence. *Id.* at 87. The agency of course cannot act unconstitutionally, in violation of a statutory mandate, or without substantial support in the record. *Churchill Truck Lines, Inc. v. Transportation Regulation Bd.,* 274 N.W.2d 295, 299 (Iowa 1979). The court must "broadly and liberally" apply the agency findings in order to uphold, rather than defeat, the agency's decision. *Ward,* 304 N.W.2d at 237. The imposition of sanctions by administrative agencies is discretionary.

II. One assignment challenges a discretionary ruling by the deputy commissioner that struck the designation of an expert Bonnie hoped to call as a witness concerning her vocational rehabilitation. The challenged ruling was based on Iowa rule of civil procedure 125(c), the rule requiring parties to identify anticipated expert witnesses not previously disclosed "as soon as practicable, but in no event less than thirty days prior to the beginning of trial except on leave of court."

Bonnie's hearing was scheduled for December 5, 1991. She supplemented her response so as to identify her anticipated expert on November 5, 1991, thus complying with the thirty-day requirement. But the deputy found she had decided in early October to call the expert, and therefore concluded she ran afoul the "as soon as practicable" requirement of the rule. He therefore excluded the expert from testifying.

■■■ In challenging the ruling, Bonnie first argues the "thirty day" and the "as soon as practicable" requirements are alternative, so that compliance with either will suffice. We disagree; we think the two requirements are cumulative so that violation of either amounts to noncompliance. Neither do we agree with Bonnie's contention that the "as soon as practicable" requirement is somehow softened by the emphasis the deputy placed on the "thirty days prior to trial" language in its order assigning the matter for trial.

■■■ Bonnie makes a stronger argument in pointing to the severity of the sanction. Exclusion, the most severe available sanction under the rule, is not to be imposed lightly and is justified only when prejudice would result. *Lambert v. Sisters of Mercy Health Corp.,* 369 N.W.2d 417, 421 (Iowa 1985). Prejudice here to Furnas' insurer is not great. But we cannot say that cutting by half (about sixty days to thirty days) the time available for inquiry into the matter and perhaps deposing the newly named expert is totally without prejudice. To hold otherwise

on this record would deprive the deputy of his discretion to effectively enforce the "as soon as practicable" requirement of the rule. Although the deputy might well have exercised the discretion by imposing a lesser sanction, we agree with the district court in finding there was no abuse. So holding, we do not suggest that disclosure thirty days prior to trial would never be "as soon as practicable."

■ III. In another assignment Bonnie contends carpal tunnel syndrome is an occupational disease, compensable under Iowa Code chapter 85A, not, as the commissioner and district court ruled, an occupational injury compensable under Iowa Code chapter 85. After the filing of the briefs in this appeal, we decided the point adversely to Bonnie. *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 295 (Iowa 1994). Our *Noble* holding obliges us to affirm on this assignment.

■ IV. Another assignment challenges the commissioner's finding fixing the termination of Bonnie's healing period. Iowa Code section 85.34(1) provides that healing period benefits are payable to an injured worker who has suffered permanent partial disability until

[1] the employee has returned to work or [2] it is medically indicated that significant improvement from the injury is not anticipated or [3] until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

The commissioner found Bonnie's healing period ended August 9, 1990, when she was able to return to work with some restrictions. The record clearly would have supported a finding of a longer healing period, especially in the evidence of Bonnie's treating physician (selected by Furnas' insurer). His records indicated that she reached maximum medical benefits on October 4, 1990. But the commissioner, as finder of fact, is free to pick and choose from the record. The record also supports the view that Bonnie's recovery ended August 9, even though she continued thereafter to experience pain. Controlling here is our decision in *Pitzer v. Rowley Interstate*, 507 N.W.2d 389, 392 (Iowa 1993):

[A]n anticipated improvement and continuing pain or depression, if medically indicated, may extend the length of the healing period if a substantial change in industrial disability is also expected to result. If, however, it is not likely that for the treatment of continuing pain, however soothing to the claimant, will decrease the extent of permanent industrial disability, then continued pain management should not prolong the healing period.

Because we find no legal error in the challenged ruling, the assignment is without merit.

■ V. Bonnie also presses a claim for the cost of a hot tub, a claim rejected by the commissioner. Bonnie assigns error on the district court's affirmance of the rejection. Bonnie tried a hot tub at a friend's home and says it gave her substantial relief from her pain. She and her husband then bought a hot tub. According to their testimony, Bonnie received relief from its use at various times throughout the day and night. Bonnie later told the doctor of the relief she had obtained. He said that, since Bonnie tried the tub for "over a period of one to two months," the benefit seemed to be "a reproducible finding." On the basis of this finding, the doctor gave Bonnie a prescription for the hot tub.

We cannot find legal error in the commissioner's rejection of the claim. A request for such an item, more often used as a luxury item than as an instrumentality of health care, is quite apt to be viewed with skepticism. Skepticism is particularly appropriate here because, as the insurer points out, the purchase of the hot tub was first the idea of the patient. It preceded Bonnie's visit with the doctor and the prescription which supports the claim. The insurer had no advance opportunity to contest the purchase, explore its real necessity, or inquire into comparative costs. The assignment is without merit.

■ VI. The final issue concerns the commissioner's determination that Bonnie's condition is a scheduled member injury, not an injury to her body as a whole.

Bonnie's testimony, and that of her husband, supported her version on the point. On the other hand her medical records (including her earlier assurances to her doctor that she had "minimal problems compared with earlier") support the scheduled member injury finding. Once again, because substantial evidence supports the disputed finding, there was no error.

**AFFIRMED.**