Jeffrey McCRACKEN, Appellant,

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 97–2133.

Supreme Court of Iowa.

June 3, 1999.

Joseph A. Nugent, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Chris Odell, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and CADY, JJ.

LAVORATO, Justice.

In this judicial review proceeding, Jeffrey McCracken appeals from the district court ruling affirming the Iowa Department of Human Services' refusal to expunge a founded child abuse report against him following a hearing before an administrative law judge (ALJ). Earlier, the department had conducted an investigation into the same incident, and after determining the abuse allegation was unfounded, it expunged the unfounded report. Given these circumstances, McCracken contends the department lacked authority to conduct the second investigation. He also contends the department deprived him of procedural due process at his hearing. We affirm.

I. In March 1995, the Des Moines police conducted an investigation into an allegation of sexual abuse against McCracken regarding his daughter, M.M. Phyllis Franklin, a department investigator, was investigating the same incident to determine whether such abuse had occurred. The incident allegedly took place in April 1993 while father and daughter were at home. M.M. was eleven years old at the time.

Charles Lewis, a Des Moines detective, and Franklin interviewed M.M. on March 9, 1995. According to M.M., McCracken asked her to put her hand down his sweatpants, and she refused. M.M. told Lewis and Franklin that McCracken said he was testing her to see if she would do anything because she had been staying after school with a male teacher. M.M. said she became upset and started to cry, at which point McCracken told her not to say anything to her mother because it was not anything that her mother would understand.

The Des Moines police never filed charges. They did, however, transfer the case to the Carlisle authorities where the incident allegedly took place. The Carlisle authorities did not file charges against McCracken either.

Following her investigation, Franklin conferred with her supervisor, Stephen Gross. Both felt that McCracken's conduct did not rise to the level of a founded report. Thereafter, Franklin filed an unfounded child abuse report on April 28, 1995. The department expunged the report pursuant to Iowa Code section 235A.19 (1995).

In September 1995, Cynthia Hardy, another department investigator, was investigating an unrelated allegation of physical abuse by M.M.'s mother regarding M.M. M.M. told Hardy that she would like to live with her father but could not because of the 1993 incident. M.M. volunteered to Hardy what had happened in that incident. According to what Hardy claims the child told her, McCracken confronted M.M. while she was in a bedroom. McCracken allegedly opened his sweatpants and asked M.M. to put her hand in his pants and to touch his penis. M.M. told Hardy that she refused her father's request and that the incident frightened her.

Hardy discussed these allegations with Franklin and Gross. Apparently, Franklin was able to remember some of the details of her investigation, although her report was not available.

Hardy interviewed McCracken in the presence of his attorney. Hardy recounted what M.M. said had occurred between McCracken and M.M. Although the attorney would not allow McCracken to talk about M.M.'s specific allegations, McCracken did say that the sexual abuse had occurred three years ago. He also asked Hardy if she were aware of that fact. Hardy interpreted these statements to mean that the sexual abuse had in fact occurred, but it had occurred three years ago.

Hardy determined the sexual abuse that M.M. had alleged was founded with McCracken as the perpetrator. Hardy based this determination on two factors: (1) McCracken's admissions, and (2)

M.M.'s credibility. Regarding the latter factor, Hardy noted that M.M.

> was extremely credible due to the fact that the child wants very much to live with her father and therefore would not have talked about this sexual abuse were it not true. As stated above, the child was saying that she wanted to live with her father but knew she could not due to what he has done in the past. The child then elaborated.

In October 1995, the department notified McCracken that the allegation of sexual abuse was founded, and for that reason the department was placing his name on the child abuse registry. Shortly thereafter, McCracken filed a written notice of appeal regarding the department's findings that McCracken had sexually abused M.M. McCracken requested a correction of the information and findings in Hardy's founded report. The department reviewed Hardy's report and confirmed the finding of sexual abuse. McCracken then made a timely written request for review of the department's decision to place his name on the child abuse registry.

At the administrative hearing on this request, the ALJ questioned M.M. under oath via a telephone conference out of the presence of McCracken and others who were present at the hearing. M.M. testified that McCracken pulled his sweatpants out and told her to put her hand down his pants and she refused. M.M. testified further that McCracken said he was proud of her.

In his testimony, McCracken admitted that he told M.M. to put her hand down his sweatpants but denied he asked her to touch him. He denied any sexual intent. Rather, he explained his actions by saying that he wanted to make M.M. aware of what she could get herself into when she is alone with somebody she thinks she can trust. According to McCracken, what prompted the incident was M.M.'s insistence to be alone with a male teacher she thought she could trust. McCracken also admitted he told M.M. not to tell her mother about the incident. He, however, denied any bad motive in doing so. He testified his reasons for telling M.M. not to tell her mother was because the mother was always accusing him of having sexual affairs and he was afraid the mother would use the incident against him.

Franklin testified that, had she learned McCracken had solicited the child to touch him, she "would have made a founded eliciting sex" report. Franklin also testified that because of a child's fear it is common for a child not to give much information on a first interview and that at a later time the child may be able to give more information.

Following the hearing, the ALJ filed a proposed decision affirming the department's decision to deny correction or expungement of Hardy's founded abuse report. Thereafter, McCracken requested a review of the proposed decision and submitted written arguments to support his appeal. The department adopted the ALJ's proposed decision as the department's final decision.

Later, McCracken filed a petition for judicial review in the district court. In his appeal to the district court, McCracken contended that the department's actions in reopening an unfounded child abuse investigation was in excess of its statutory authority. He also contended that he was denied procedural due process at his hearing before the ALJ because he was (1) unable to review the entire record, (2) unable to confront Hardy at the hearing, and (3) denied counsel at the state's expense. The district court rejected these contentions, which McCracken now raises in his appeal to us.

■■■ II. In this administrative proceeding, we conduct our review in accordance with Iowa Code section 17A.19(8). Specifically, we review this case to determine whether the department has exceeded its statutory authority. *See* Iowa Code § 17A.19(8)(b) (review based on claim that agency exceeded its statutory authority).

In making that determination, we decide whether our conclusions are the same as those of the district court. *See Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994). Like the district court, we accord limited deference to the agency's interpretation of law, including statutory interpretation. *See id.*

**III.** As mentioned, the department adopted the ALJ's proposed decision as the department's final decision. The ALJ directly addressed the statutory-authority issue before us:

> The department is required by law to investigate child abuse allegations. Iowa Code section 232.71. Since no previous child abuse report existed at the time (by virtue of its being unfounded), when the allegations arose in this case, the department had to do another investigation. The department's rules specifically provide that an addendum can be added to a previous report which would change the previous finding. 441 IAC 175.4(4) "d". In this case, a whole report had to be written because the previous one no longer existed. There is nothing in the law or rules that precludes the department from looking at an alleged incident a second time.

In support of his contention that the department exceeded its authority, McCracken relies on Iowa Code section 235A.18(2), which provides in part:

> Child abuse information which cannot be determined by a preponderance of the evidence to be founded or unfounded shall be sealed one year after the receipt of the initial report of abuse and expunged five years after the date it was sealed. *Child abuse information which is determined by a preponderance of the evidence to be unfounded shall be expunged when it is determined to be unfounded.*

*Id.* (emphasis added).

McCracken interprets this statutory provision as clear evidence of legislative intent that no further examination, addendums, or amendments are allowed to a previous unfounded report. He argues that such examination, addendums, or amendments are allowed only when (1) an earlier investigation results in an "undetermined" or "founded report," and (2) new information becomes available that would change the finding, conclusion, or recommendation of the previous report.

McCracken characterizes Hardy's investigation as a reopening of the first investigation and her report as an amendment or addendum to Franklin's unfounded report. He points to an absence of any specific statutory authority to reopen investigations resulting in "unfounded reports." In addition, he argues that the statutory requirement for expungement of unfounded reports indicates legislative intent to bring finality to an investigation resulting in an unfounded report. Because no previous child abuse report existed when Hardy undertook a second investigation, McCracken concludes there was no report the department could amend.

■ We agree with the department that McCracken mischaracterizes the nature of Hardy's second investigation as a reopening of the first investigation. He also mischaracterizes Hardy's report as an amendment to Franklin's unfounded report. Hardy commenced a wholly new investigation after stumbling onto new information that substantiated a claim of sexual abuse. In testimony, a child protection specialist with the department gave logical substance to this conclusion:

> A. [441 IAC 175.4(4)(d) ] provides … that an addendum to the part 2 of a report should be submitted when new information becomes available which would alter the finding, conclusion or recommendation of the previous report.
>
> Q. Okay. So, technically, this information would have amended the findings of a previous report, is that correct? A. Under law, an unfounded report no longer exists. It's required to be immediately expunged, so addendum does not apply in this case. If we had an unde-

termined report or a founded report, this information provided by [M.M.] five months after would have been attached and basically, it was additional information in regard to a previous founded or an undetermined. In the case of an unfounded the department has no other alternative in reviewing if they determine something is investigable abuse, other than to basically open up an investigation, which was done in this case.

Q. So, because previously, it was an unfounded report, there is no report to amend? A. That's correct.

Q. So that's why we have a whole new report on this? A. That's correct.

Iowa Code chapter 232 does not speak to whether the department has the authority to conduct a second investigation into child abuse allegations on the heels of an unfounded report concerning the same alleged incident. We must therefore resort to rules of statutory construction. Our ultimate goal, of course, is to give effect to legislative intent. *Hornby v. Iowa Bd. of Regents*, 559 N.W.2d 23, 25 (Iowa 1997). In determining legislative intent and reaching a reasonable construction that will give effect to, rather than defeat, that intent, we consider the statutory objective the legislature desired to accomplish as well as the evils and mischiefs it sought to remedy. *See* Iowa Code § 4.6(1), (5). Additionally, we consider and construe all parts of a statute together. *Kohrt v. Yetter*, 334 N.W.2d 245, 246 (Iowa 1984). And, finally, we ordinarily consider legislation that regulates conduct for the public good as remedial and therefore entitled to a liberal construction. *Hornby*, 559 N.W.2d at 25.

Provisions relating to child abuse reporting and investigation are found in Iowa Code chapter 232. The first section in that chapter provides that the chapter "shall be liberally construed." Iowa Code § 232.1. Iowa Code section 232.67 states the legislature's specific objective underlying child abuse reporting, investigation, and rehabilitation:

Children in this state are in urgent need of protection from abuse. It is the purpose and policy of this part 2 of division III to provide the greatest possible protection to victims or potential victims of abuse *through encouraging the increased reporting of suspected cases of such abuse, insuring the thorough and prompt investigation of these reports, and providing rehabilitative services, where appropriate and whenever possible to abused children* . . . .

*Id.* (emphasis added). Clearly, therefore, the provisions relating to child abuse reporting, investigation, and rehabilitation—sections 232.67 through 232.77—are remedial in nature and deserve from us a liberal construction.

We agree with the department that prohibiting a second investigation into an incident of child abuse is diametrically opposed to the clear legislative policy of "encouraging the increased reporting of suspected cases" of child abuse and of "insuring the thorough and prompt investigation of these reports." In fact, stringent statutory reporting requirements mandate that the department conduct an investigation and make a child abuse report after coming into possession of information regarding suspected child abuse. *See* Iowa Code §§ 232.69, 232.70, 232.71. Once the department receives what the statute terms "a child abuse allegation," the law provides that the department, with one exception not applicable here, "*shall* promptly commence an appropriate investigation." Iowa Code § 232.71 (emphasis added). Thus, if the department receives such an allegation, it has no discretion on whether or not to conduct an investigation—it *must* do so.

As the department points out, no statute restricts the department's mandatory section 232.71 duty to *one* investigation of a child abuse allegation. In fact, when Hardy received new information from M.M. that McCracken had asked M.M. to touch him, Hardy was statutorily bound as a mandatory reporter to report

that information to the department. *See* Iowa Code § 232.69(1)(b)(2) (requiring a social worker under the department's jurisdiction to report suspected child abuse within twenty-four hours). And, as mentioned, the department was statutorily required to conduct an investigation. Had Hardy not reported the information, she faced possible civil and criminal penalties. *See* Iowa Code § 232.75.

McCracken's finality argument would prevent the department from conducting a second investigation, even though new information substantiated a child abuse allegation. Such a result would completely undermine the legislative objectives we have mentioned: protecting child abuse victims and ensuring prompt and thorough investigations. Franklin, an eighteen-year department employee, testified that it is not uncommon for a child to omit details of the abuse during the first investigation. That is exactly what happened here: M.M. did not tell Franklin that her father had asked M.M. to touch him; that information did not come out until Hardy talked to M .M. several years later.

The district court correctly held that the department had statutory authority to conduct an investigation involving the alleged sexual abuse, even though a previous investigation of the same allegation resulted in an unfounded report.

**IV.** McCracken also questions the propriety of Hardy talking with Franklin about the case during the investigation. He contends that, because the first report was unfounded and expunged, this discussion violated his rights under Iowa Code section 235A.15. The district court found this contention lacked merit, and so do we.

Iowa Code section 235A.15 provides—with certain exceptions—for confidentiality of child abuse information. Iowa Code section 235A.15(3), however, grants a limited class of persons access to unfounded child abuse information: "Access to unfounded child abuse information is authorized only to those persons identified in subsection 2, paragraph ... 'b' " of section 235A.15. The persons in subsection 2, paragraph b include "an employee or agent of the department of human services responsible for the investigation of a child abuse report." Iowa Code § 235A.15(2)(b)(2). At the time of the second investigation, Hardy was a social worker for the department, and she was responsible for the investigation of a child abuse report. Hardy, therefore, fell within the section 235A.15(3) exception.

**V.** McCracken last contends that the department deprived him of procedural due process under article I, section 10 of the Iowa Constitution. Specifically, he contends the department deprived him of such due process at his hearing before the ALJ because he was (1) unable to review the entire record, (2) unable to confront Hardy at the hearing, and (3) denied counsel at the State's expense.

The department counters, contending McCracken never raised these constitutional due process issues before the ALJ and for that reason he has not preserved those issues for our review. We agree.

The hearing before the ALJ was a contested case hearing. In a contested case hearing, our review is limited to those questions considered by the administrative agency. *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994). To preserve constitutional issues for our review, a party must raise such issues at the agency level. *Id.* The party must raise such issues, even though the agency lacks authority to decide constitutional issues. *Id.* Our review of the record before the department leads us to conclude McCracken never alerted the department to the constitutional issues he now seeks to raise here. We therefore conclude he has not preserved those issues for our review.

**AFFIRMED.**