# IN THE COURT OF APPEALS OF IOWA

No. 3-1119 / 13-0748
Filed February 19, 2014

**CARE INITIATIVES d/b/a HERITAGE**
**NURSING & REHAB,**
    Petitioner-Appellant,

**vs.**

**BONNIE HOFFMAN,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,

Judge.


An employer appeals from a district court decision affirming the workers'

compensation commissioner's ruling that the claimant is permanently and totally

disabled. **AFFIRMED.**


Joseph Thornton of Smith Peterson Law Firm, L.L.P., Council Bluffs, for

appellant.

Emily Anderson of Riccolo & Semelroth, P.C., Cedar Rapids, for appellee.


Considered by Vogel, P.J., and Mullins and McDonald, JJ.

**MULLINS, J.**

An employer, Care Initiatives, appeals from a district court judicial review decision affirming the ruling of the workers' compensation commissioner awarding the claimant, Bonnie Hoffman, permanent total disability benefits for an injury she sustained while working. The employer asserts: 1) there is not substantial evidence to support the commissioner's finding; 2) the commissioner's decision was based upon an irrational, illogical, or wholly unjustifiable application of the law to the facts; and 3) the commissioner's decision was an abuse of discretion.

## I. Background Facts and Proceedings.

Hoffman was a registered nurse at the time she sustained an injury that is the subject of this appeal. Hoffman graduated from high school and attended one year of college. In 1968, she obtained a nursing diploma from St. Luke's Hospital and Coe College. After obtaining her nursing license, Hoffman worked as a labor-and-delivery nurse, an office assistant, a nurse recruiter, an industrial nurse in a factory, a nutrition- and weight-loss-class teacher, and finally a charge nurse. At the time of the workers' compensation hearing, Hoffman was sixty-five years old and had been a nurse since 1968.

In August 2007, Hoffman was working at Heritage Nursing and Rehabilitation (Heritage), one of several residential, senior-care facilities operated by Care Initiatives. On August 27, Hoffman injured her right shoulder and arm while repositioning a resident in his bed and lifting another resident from the floor. Hoffman is right-hand dominant. Hoffman reported her injury to

Heritage's assistant director. Upon consulting a doctor, Heritage placed Hoffman on light duty.

In November 2007, Hoffman underwent an MRI for her injury which showed a torn rotator cuff, a sixty percent tear of the bicep tendon, and a subluxation of the sternoclavicular joint. In January 2008, orthopedic surgeon Dr. Fred Pilcher performed surgery on Hoffman's shoulder and released her to work four-hour days with no use of her right arm.[1] Hoffman reported constant pain in her shoulder that increased with a wider range of motion or repetitive movement. Hoffman also attended physical therapy, but reported no improvement in her pain. In July 2008, Dr. Pilcher reported Hoffman had achieved maximum medical improvement and had a twelve percent whole-person impairment. On July 15, 2008, Heritage terminated Hoffman's employment because of her physical restrictions. Hoffman petitioned for workers' compensation benefits, and the parties stipulated Hoffman's injury was work-related. Hoffman's petition came on for hearing before the deputy workers' compensation commissioner in June 2011.

In September 2009, Hoffman underwent reverse right shoulder replacement surgery under the care of Dr. Brian Adams. Dr. Adams released Hoffman from his care in March 2010 after she achieved maximum medical improvement. He assessed her to have twenty-percent impairment and recommended a number of physical restrictions: Hoffman was able to lift, push, or pull one to five pounds frequently with one or both hands or six to thirty

---

[1] This work included washing handrails, filing papers, answering telephones, and other clerical work.

pounds occasionally with both hands; but never more than thirty pounds. Dr. Adams also reported Hoffman was not able to climb. She was able to grasp, push or pull, and reach out occasionally, but she should not reach above her shoulder. Dr. Adams also reported Hoffman was fully able to do fine manipulation. Although Hoffman reported discomfort and pain in her shoulder and arm, Dr. Adams stated he found no structural reason for the discomfort. He also stated, "Some patients do report mild discomfort in the shoulder following a successful reverse total shoulder but it is not considered to be a limiting factor within the activity restrictions listed[.]"

Between her termination in July 2008, and the hearing before the deputy commissioner in June 2011, Hoffman never reentered employment. At the hearing Hoffman offered into evidence a spreadsheet giving details of her job applications since August 2008 and their outcomes. The spreadsheet showed Hoffman applied to around 150 employers. For most positions Hoffman submitted an online application or sent a resume. The spreadsheet contains notations such as "sent resume," "applied online," "weight restrictions," "must be able to lift 50 lbs," and other notes. Hoffman made in-person contact with the prospective employer on only a few occasions. Hoffman had one interview, but the prospective employer stated she was unable to perform the job due to lifting restrictions. The positions she applied for include registered nurse, receptionist, billing staff, pharmacy technician, clerical staff, retailer, and nurse recruiter. There is a gap in the record from July 2009 to July 2010 during which Hoffman

did not apply for any jobs. She testified she had shoulder surgery with follow-up treatment and physical therapy during this time and was unable to drive.

Hoffman also sought assistance in regaining employment. In August 2010, she applied for assistance through Iowa Vocational Rehabilitation Services, which classified her as "significantly disabled" and placed her on a waiting list for services. She registered with the Iowa Reemployment Services program for training on professional job application skills. She also obtained a work certificate through Iowa Workforce Development designed to inform prospective employers of her qualifications. At Worklife Resources, Inc., a vocational rehabilitation counselor, Kent Jayne, administered a number of employment-related tests and evaluated her employment prospects.

Pain continued to affect Hoffman's ability to work. During a deposition on December 16, 2010, Hoffman testified she was experiencing pain that day. Care Initiatives' counsel asked, "How would you describe the pain that you're having today." Hoffman described it as "an aching in the shoulder and biceps, like a nagging toothache, not one you really want to see a dentist about." Hoffman also testified the pain varied, feeling better and worse day-to-day. On that particular day, she described the intensity of the pain as four or five out of ten, which was unusually tolerable. She testified the pain intensity was nine out of ten roughly half the time.

In June 2011, at the hearing before the deputy commissioner, Hoffman testified she still had constant pain in her right shoulder, bicep, and the area where the clavicle and sternum meet. The pain increased with daily activities.

Hoffman testified the pain had changed how she did many activities such as washing dishes and going grocery shopping. She also testified she experienced pain while driving, and her daughter drove her to a destination half an hour or forty-five minutes away. Although she took no medications, she did use a transcutaneous electrical nerve stimulation (TENS) unit to treat the pain.

Kent Jayne, of Worklife Resources, Inc., testified as Hoffman's vocational expert and provided a written report of his conclusions. Jayne is a certified rehabilitation counselor, has a master's degree in rehabilitation counseling, is a member of the American Academy of Pain Management, and has been a vocational rehabilitation counselor for twenty-five years. Jayne testified he administered a number of tests to Hoffman to determine whether she was capable of employment and what kind of employment she would be capable of based on her physical limitations, background, training, and experience. Jayne administered tests in nonverbal and verbal reasoning, clerical perception, fine motor and finger dexterity, and gross manual dexterity. The testing simulated a sedentary office work environment where the subject can take breaks and work at their own pace.

He also took into consideration the limitations outlined in Dr. Adams' report. Jayne testified these restrictions on lifting, reaching, and handling were very severe vocational limitations, not only in nursing but in the labor market generally. Jayne testified Hoffman performed adequately in nonverbal and verbal reasoning tests, but poorly in the physical tests. In the context of the simulated office environment, Hoffman was unable to complete some testing

because of poor endurance and pain in her right arm and shoulder. Because this simulation took only three-and-a-half hours, Jayne believed Hoffman would be unable to work a full day carrying out similar activities, which included keyboarding, reaching, and handling items. Such activities, Jayne stated, are required in almost all jobs.

In his written report, Jayne noted how the pain Hoffman reported affected her daily activities such as lifting laundry or groceries, showering, dressing, and doing housework. She required the help of family or friends to complete everyday tasks inside and outside the home. When cross-examined, Jayne agreed that no medical doctor had restricted Hoffman in any way due to pain. Jayne also found Hoffman was very limited in some areas of fine motor coordination, a finding Care Initiatives regards as inconsistent with Dr. Adams' conclusion that Hoffman could perform fine manipulation without restriction. Jayne testified he performed different testing than Dr. Adams and his finding was in addition to Dr. Adams' report, not inconsistent with it.

Jayne's report, consistent with his hearing testimony, concluded,

Ms. Hoffman has been precluded as a consequence of her multiple difficulties from performing work that her experience, training, education, intelligence, and physical capacities would otherwise have permitted her to perform but for injury. She is unable to perform any services except those which are so limited in quantity, dependability, and/or quality that there is no reasonably stable labor market for them.

About two months before the hearing, Care Initiatives hired a rehabilitation consultant, Shannon Ford, to evaluate Hoffman's employability and assist her in applying for jobs. Ford produced a written report of her evaluation and testified as Care Initiative's vocational expert. Ford is a medical case manager and

rehabilitation consultant with Health Systems International. She is a certified rehabilitation counselor with a master's degree in rehabilitation counseling. She has sixteen years of experience. Ford testified she reviewed Hoffman's application to the Iowa Department of Vocational Rehabilitation, documentation from the Iowa Works program, medical records, and list of job applications. Ford had one initial vocational interview with Hoffman. Ford testified she interpreted Dr. Adams' restrictions to mean there was no limitation on Hoffman doing office work, including working at a computer. Based on these limitations and Hoffman's experience and training, Ford believed Hoffman would be able to obtain alternative employment in a less physically demanding area of nursing, such as office nursing, working in a lab, or as a medical assistant.

Ford testified she considered only objective factors in her assessment of Hoffman, and did not consider any effect pain might have on Hoffman's abilities. Ford explained that to perform her analysis of Hoffman's transferable skills, she input information about Hoffman's prior work history, functional capabilities, and educational background into a computer program. The program then identified categories of jobs in which Hoffman would be employable. Ford provided Hoffman a number of job leads based on the results of this program. Ford testified she did not look into whether any of the leads had any restrictions.

Both Ford and Jayne testified regarding the possibility of Hoffman retraining for a different employment. Ford testified Hoffman was capable of retraining and that some classes or workshops existed that would not involve a lengthy training process. Ford did not perform any testing to determine

Hoffman's ability to retrain. Jayne testified he did not think Hoffman was capable of retraining, given her physical limitations. Most important, her age was such that retraining would not make employment more likely.

The deputy commissioner heard this testimony and issued its ruling on July 28, 2011. The deputy commissioner found that Hoffman's pain was most accurately described during her deposition testimony as "a tolerable aching in the shoulder and biceps that was similar to a toothache, for which one would not see a dentist." The deputy commissioner also found little to credit in Jayne's testimony and report. The deputy commissioner had encountered Jayne in previous workers' compensation cases and found his conclusions were "stock language that the undersigned [deputy commissioner] regularly encounters in Mr. Jayne's reports." Instead, the deputy commissioner regarded as most credible Dr. Adams' report and Hoffman's deposition description of her pain, which she found was "consistent with her having right shoulder and upper extremity discomfort that is a reasonable residual from the work related condition and its treatment." The deputy commissioner also credited Ford's testimony that Hoffman was able to perform work with light physical demands. With respect to her job search, the deputy commissioner also concluded Hoffman "made, at best, a lackluster attempt to follow through on any job lead" and that Hoffman's failure to make personal contact with most potential employers signified a lack of genuine motivation to find employment. On July 28, 2011, the deputy commissioner filed a decision finding Hoffman's loss of earning capacity was 75

percent and ordering Care Initiatives to pay Hoffman 375 weeks of permanent partial disability benefits of $637.76.

Hoffman appealed the deputy's commissioner's decision to the workers' compensation commissioner for de novo review. The commissioner issued a ruling on July 27, 2012, concluding Hoffman had a total and permanent disability. In so finding, the commissioner considered the fact that Care Initiatives terminated Hoffman due to her work restrictions as evidence of her lack of employability:

> An employer knows the demands that are placed on its workforce. Its determination that the worker is too disabled for it to employ is entitled to considerable weight. If the employer in whose employ the disability occurred is unwilling to accommodate the disability, there is no reason to expect some other employer to have more incentive to do so.

The commissioner noted the deputy's dismissal of Jayne's testimony but made different credibility findings:

> There is no showing that the findings of Mr. Jayne are not based upon his in-person assessment of claimant's current condition. The report is quite specific and detailed to claimant's impairment, restrictions, vocational history, and her present vocational status. The report does use concise language that mirrors the standards considered by this agency in considering disability.

With regard to Hoffman's claims of pain, the commissioner also came to a different conclusion, stating that although the deputy found Hoffman's deposition testimony of her pain most credible, the description Hoffman provided during the hearing was equally compelling and was entitled to consideration in the assessment of a vocational expert. The commissioner noted particularly Hoffman's testimony of how the injury and pain have affected her ability to function on a daily basis. Finally, the commissioner noted Hoffman's age and the

length of time she had been a nurse and found retraining efforts would be unlikely to lead to future employment. The commissioner concluded, "[C]laimant has sustained an injury which permanently disables her from performing work within her experience, training, education, and physical capacities." The commissioner then ordered Care Initiatives to pay Hoffman permanent total disability benefits at the rate of $637.76 per week for the period of Hoffman's disability commencing March 31, 2010. Care Initiatives petitioned for judicial review and the district court affirmed the commissioner's findings. Care Initiatives appeals.

## II.     Scope and Standard of Review.

Our scope of review in judicial review cases is for correction of errors at law. Iowa R. App. P. 6.907. Iowa Code section 17A.19 (2012) governs judicial review of agency decisions. The district court acts in an appellate capacity when it exercises its judicial review power. *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). We apply the same standards of section 17A.19(10) when we review the district court's decision to determine whether we reach the same conclusions as the district court. *Id.* If our conclusions are the same, we affirm. *Id.* Otherwise, we reverse. *Id.*

Our standard of review depends on the issues raised on appeal. *Jacobson Transp. Co. v. Harris*, 799 N.W.2d 192, 196 (Iowa 2010). In workers' compensation cases, Iowa Code chapter 85 vests with the agency the responsibility of determining an employee's right to benefits. *See Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004). "Because the agency is

charged with such responsibility, the agency must necessarily make factual findings to determine that right." *Id.* We are bound by the agency's determinations of fact unless the agency's fact determinations are "not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f). Therefore, if what is alleged is an error of fact, we must determine if the commissioner's findings are supported by substantial evidence. *Id.*; *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). "The determining factor is not whether the evidence supports a different finding but whether the evidence supports the finding actually made." *I.B.P. v. Al-Gharib*, 604 N.W.2d 621, 632 (Iowa 2000). Courts should broadly and liberally apply those findings to uphold rather than defeat the agency's decision. *Id.* If the alleged error is in the commissioner's application of the law to the facts, we disturb the decision if it is "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact[.]" Iowa Code § 17A.19(10)(m); *Meyer*, 710 N.W.2d at 219.

The agency's decision also cannot be unreasonable or involve an abuse of discretion. *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994). Unreasonableness is "action in the face of evidence as to which there is no room for difference of opinion among reasonable minds, or not based on substantial evidence." *Id.* Abuse of discretion "is synonymous with unreasonableness, and involves lack of rationality, focusing on whether the agency has made a decision clearly against reason and evidence." *Id.*

## III.    Analysis.

In this case, Care Initiatives contends the district court erred in finding substantial evidence to support the commissioner's decision and in ignoring the factual findings of the deputy commissioner. Next, Care Initiatives contends the district court erred in finding the commissioner's decision was not based on an irrational, illogical, or wholly unjustifiable application of the law to the facts. Finally, Care Initiatives contends the commissioners' finding that Hoffman is permanently disabled was an abuse of discretion.

### A.    Findings of the Deputy Commissioner.

Our administrative code provides judicial review is available for "any final agency action," however, "the agency action shall not be final until all agency remedies have been exhausted." Iowa Code § 17A.19(1); *see Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 358 (Iowa 1999) ("Only final agency action is subject to judicial review."). Here, administrative remedies were exhausted by appeal to and de novo review by the commissioner. The commissioner's decision is the final action of the agency; therefore, it is this decision that is now subject to review.

Care Initiatives agrees it is not the deputy's decision but the commissioner's decision that is subject to judicial review. However, it argues the district court should have considered and given weight to the deputy commissioner's findings because the deputy commissioner presided over the hearing and is better able to assess the credibility of the witnesses than the commissioner. Care Initiatives cites to the requirement that the district court

examine the record "as a whole," as set out in Iowa Code section 17A.19(10)(f)(3):

> [T]he adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses and the agency's explanation of why the relevant evidence in the record supports its material findings of fact.

Our supreme court has also stated,

> When the agency decision is attacked on the substantial evidence ground in section [17A.19(10)(f)(3)], the district court must examine the entire record. This includes the hearing officer's decision. The hearing officer's decision is not evidence, but his findings may affect its weight when credibility issues are involved.

*Iowa State Fairgrounds Sec. v. Iowa Civil Rights Com'n*, 322 N.W.2d 293, 295 (Iowa 1982). This is because "evidence supporting a conclusion may be less substantial when an impartial, experienced examiner [the deputy commissioner] who has observed the witnesses and lived with the case has drawn conclusions different from the [commissioner]." *Id.* (quoting *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 496 (1982)).

In this case, the district court found, "[A] deputy's decision is not to be considered in an appeal, which must be based solely upon the final agency decision . . . . The Deputy's opinion concerning Mr. Jayne's testimony cannot be used as a basis for overruling the Commissioner who did not agree with the Deputy." Because section 17A.19(10)(f)(3) requires the court to examine the entire record, including any evidence that detracts from or supports any finding, and because of the foregoing authority, the deputy's credibility findings are

entitled to consideration upon judicial review. *See Iowa State Fairgrounds Sec.*, 322 N.W.2d at 295. However, the deputy's findings are not controlling and we give no particular deference to them. Furthermore, our consideration of them does not change the standard we apply when the claimant attacks the final agency decision on substantial evidence grounds.

## B. Substantial Evidence.

The district court may disturb the final decision of the agency only under circumstances set out in Iowa Code section 17A.19(10). One such circumstance is when it determines "that substantial rights of the person seeking judicial relief have been prejudiced" and the agency decision is "based upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f). "Substantial evidence" means "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). Care Initiatives contends there was not substantial evidence to support the commissioner's findings of fact.

An industrial disability is a "loss of earning capacity, and not a mere 'functional disability' to be computed in terms of percentages of the total physical and mental ability of a normal [person]." *Diederich v. Tri-City Ry. Co. of Iowa*, 258 N.W. 899, 902 (Iowa 1935). The criteria considered include the claimant's

age, education, qualifications, experience, and ability to engage in the employment previously held. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). Total disability does not mean a state of absolute helplessness. *I.B.P., Inc. v. Al-Gharib*, 604 N.W.2d at 633 (Iowa 2000). Rather, total disability occurs "when the injury wholly disables the employee from performing work that the employee's experience, training, intelligence, and physical capacities would otherwise permit the employee to perform." *Id.*

The commissioner found Hoffman had "sustained an injury which permanently disable[d] her from performing work within her experience, training, education, and physical capacities." In coming to this decision, the commissioner credited Jayne's testimony, particularly with regard to his assessment of Hoffman's restrictions and the effect of pain on her physical capacities. The commissioner relied upon Jayne's testimony that, because of Dr. Adams' restrictions, Hoffman would be unable to do the kinds of activities required by any job she might otherwise be qualified to perform.

The commissioner also gave greater credit to the description of Hoffman's pain she gave during the hearing. The deputy commissioner found Hoffman's deposition description, "an aching . . . like a toothache, not one you [ ] see a dentist about," most credible and, as stated above, this is entitled to some consideration. However, the deputy commissioner was not present for the deposition testimony, thereby diminishing the rationale for general deference to the credibility determinations of the hearing officer. Moreover, the description Hoffman gave during the deposition was specifically limited to the pain she was

experiencing on that particular day. She testified the pain varied day-by-day and the day of the deposition the pain was unusually tolerable, rating four or five out of ten. At the deposition, Hoffman further testified she experienced pain she rated at nine out of ten about every other day. This part of Hoffman's deposition testimony was consistent with her testimony at the hearing in which she described the pain she experienced and how it impaired her ability to carry out daily activities.

Jayne also testified on the same subject. Care Initiatives complains Jayne is unqualified to testify about Hoffman's pain because he is not a medical doctor. Jayne is, however, a rehabilitation expert and a member of the American Academy of Pain Management. He was not asked or required to provide an explanation for Hoffman's pain; his testimony is limited to how the pain has affected Hoffman's physical capacities. He took Hoffman's medical records into account, including Dr. Adams' restrictions, in his assessment of Hoffman. He also conducted his own testing of Hoffman's abilities as part of his assessment.

Care Initiatives also argues we should consider the deputy commissioner's findings that Jayne was not a credible expert witness because he used similar language in multiple reports before that deputy commissioner. The deputy commissioner's statement is not evidence in this case; nothing else in the record indicates Jayne's report is not credible. The commissioner found the report to be specific, detailed, credible, and a result of Jayne's in-person assessment of Hoffman's condition. The commissioner found the language Jayne used simply "mirror[ed] the standards considered by this agency in

considering permanent disability." Our review of Jayne's report and testimony discloses the commissioner's findings with regard to Jayne's credibility are supported by substantial evidence. Although the commissioner did not state explicitly that he gave more weight to Jayne's testimony than Ford's, Ford conducted no independent testing; selected jobs for Hoffman from a computer program; and failed to look into whether the job leads she provided had restrictions that would disqualify Hoffman. Ford also ignored any effect that constant pain had on Hoffman's physical capacities. The record supports the commissioner's view of Jayne's credibility.

The commissioner concluded Hoffman had a total and permanent industrial disability that prevented her from performing work within her experience, training, education, and physical capacities. Dr. Adams placed restrictions on Hoffman with regard to lifting that mean she is no longer able to perform the duties of a nurse. She is only occasionally able to grasp, push, pull or reach out, motions that are required in almost all jobs. Dr. Adams reported she was able to do fine manipulation, however, Jayne concluded from his testing she would be unable to carry out most clerical-type work for a full work day due to her restrictions and the pain remaining in her arm and shoulder. Hoffman herself testified that the pain interferes with her ability to carry out daily activities. She requires help from family members for many tasks, including driving longer distances.

The commissioner also found Hoffman's job search was extensive, yet unsuccessful. Care Initiatives insists Hoffman's tendency to apply for jobs

through online applications or emailed resumes shows a lack of commitment to reemployment. Hoffman's record of job applications shows over 150 job applications submitted, and numerous notations indicating lifting restrictions, responses from employers, and other follow-up work. Hoffman had been applying for jobs since she was terminated with no success, around three years. Even Heritage, where she had worked without incident for seventeen years, was unable or unwilling to accommodate her restrictions. The commissioner also considered that Hoffman is an older worker who is close to retirement; has been a registered nurse most of her life; has limited training, education, or experience in any other field; and whose job prospects are unlikely to improve with more retraining. Upon our review of the record as a whole, we conclude substantial evidence supports the commissioner's factual findings. Bound by these facts, we agree with the commissioner and the district court that Hoffman has suffered an injury that wholly disables her from performing the work that her experience, training, and intelligence would otherwise permit her to perform. Therefore, we come to the same conclusion as the district court, that Hoffman has a permanent and total disability. Nothing in the record supports Care Initiatives' contention that the commissioner's decision in this case was based on an irrational, illogical, or wholly unjustifiable application of law to fact. Nor is there any evidence in the record supporting the contention that the commissioner's decision constitutes an abuse of discretion.

**IV.    Conclusion.**

We find substantial evidence supports the commissioner's findings of fact. Bound to these facts, we find the injured claimant is wholly disabled from performing work that her experience, training, intelligence, and physical capacities would otherwise permit her to perform.   Therefore, we come to the same conclusion as the district court, that the claimant has a permanent and total disability.  Consequently, we affirm.

**AFFIRMED.**