# IN THE COURT OF APPEALS OF IOWA

No. 22-0195
Filed November 2, 2022

**DONALD D. BRINKLEY and JUDITH D. BRINKLEY,**
Plaintiffs-Appellants,

**vs.**

**CITY OF MILFORD ZONING BOARD OF ADJUSTMENT,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dickinson County, Carl J. Petersen,

Judge.


Donald and Judith Brinkley appeal the denial of their writ of certiorari

challenging the issuance of a special use permit. **AFFIRMED.**


Brandon J. Krikke and Harold D. Dawson of Dekoter, Thole, Dawson,

Rockman & Krikke, P.L.C., Sibley, for appellants.

David J. Stein Jr. of Stein Law Office, Milford, for appellee.


Heard by Vaitheswaran, P.J., Ahlers, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DANILSON, Senior Judge.**

Good fences make good neighbors.[1]  Here, the lack of a vegetative fence or screen has led to this litigation.  The appellants, Donald and Judith Brinkley, appeal the denial of a writ of certiorari challenging the decision of the City of Milford Zoning Board of Adjustment (Board) to grant a special use permit to the Okoboji Community School District (OCSD) for a construction project adjacent to the Brinkleys' property.  In short, the Brinkleys argue the Board illegally granted the permit after OCSD failed to plant and maintain a vegetative fence or screen along the edge of their property, as required by an earlier Board decision.  We conclude we are without authority to aid the Brinkleys in this action and affirm.

## I.  Background Facts and Proceedings.

In May 2021, OCSD submitted applications to the Board seeking special use permits for the construction of a bus barn and a multipurpose building on its high school campus.  The next month, the Board discussed OCSD's applications during a special meeting, which the Brinkleys and their representatives attended.  OCSD's high school campus borders the Brinkleys' property on the north, west, and south.  The Brinkleys raised multiple issues with the project, primarily focusing on OCSD's failure to fully comply with a 2004 Board decision to grant OCSD another special exemption.  That 2004 Board decision imposed a condition that OCSD must "plant, cultivate and maintain vegetative screening in an adequate and appropriate manner on the School's property adjacent to the north, west and south of the Brinkley property" to receive a special use permit.  The Brinkleys stated

---

[1] Although there are earlier origins of different versions of the phrase, the phrase quoted is commonly attributed to the 1914 poem "Mending Wall" by Robert Frost.

OCSD never fully installed the screen as required. OCSD's superintendent stated there is currently a—possibly inadequate—row of vegetation on the north side of the Brinkleys' property. Additionally, OCSD planted trees on the south side but subsequently removed the trees three years ago due to disease. OCSD never planted vegetation on the property's west side. Nevertheless, the superintendent provided a diagram showing OCSD plans to install the required vegetative screen, but he said they want to plant vegetation after construction is complete in case of potential changes to the project. The superintendent also said he expected construction, if approved, to begin maybe as early as August 2021 and continue for approximately one year. At the end of the meeting, the Board approved OCSD's applications with a special condition: "The vegetative screens plan as presented by the school must be planted within 12 months after the 'substantial completion' of the school project."

In July 2021, the Brinkleys filed a petition for writ of certiorari, arguing the Board acted without substantial evidence and illegally by granting the special use permit despite OCSD's failure to plant the vegetative screen required in the 2004 Board decision. After a hearing, the district court found the Board acted legally in reaching a reasonable decision and there was substantial evidence to support the Board's decision, and the court annulled the writ. The Brinkleys appeal.

## II. Standard of Review.

"We 'review an original certiorari action for the correction of errors at law.'" *Ames 2304, LLC v. City of Ames, Zoning Bd. of Adjustment*, 924 N.W.2d 863, 867 (Iowa 2019) (quoting *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018)). "[T]he person seeking the writ has the burden of proof." *Stream v. Gordy*, 716

N.W.2d 187, 190 (Iowa 2006).  A proper certiorari action includes a claim a board of adjustment acted illegally.  *Id.*; *see also* Iowa R. Civ. P. 1.1403 (stating "relief by way of certiorari shall be strictly limited to questions of jurisdiction or illegality of the act complained of, unless otherwise specially provided by statute").  A board of adjustment "commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious." *Ames 2304*, 924 N.W.2d at 867 (quoting *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011)).  "We are bound by the findings in the record if there is substantial evidence to support the inferior tribunal's decision." *Id.*

The terms "'[a]rbitrary' and 'capricious' are practically synonymous." *Off. of Consumer Advoc. v. Iowa State Com. Comm'n*, 432 N.W.2d 148, 154 (Iowa 1988). A decision is 'arbitrary' or 'capricious' when it is made without regard to the law or underlying facts." *Riley v. Boxa*, 542 N.W.2d 519, 523 (Iowa 1996).  "A decision is unreasonable if it is against reason and evidence 'as to which there is no room for difference of opinion among reasonable minds.'" *Id.* (quoting *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994)).  "If the reasonableness of the board's action is open to a fair difference of opinion, the court may not substitute its decision for that of the board." *Lang v. Linn Cnty. Bd. of Adjustment*, 829 N.W.2d 1, 7 (Iowa 2013) (quoting *W & G McKinney Farms, L.P. v. Dallas Cnty. Bd. of Adjustment*, 674 N.W.2d 99, 103 (Iowa 2004)).

**III. Analysis.**

*A. Substantial Evidence.*

We first consider whether the Board's decision was illegal because it was not supported by substantial evidence.

A board of adjustment may make special exceptions to zoning ordinances by issuing a special use permit. *See* Iowa Code § 414.7(1) (2021). "A special use permit "allows property to be put to a purpose which the zoning ordinance *conditionally* allows." *City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 315 (Iowa 2006) (quoting *Buchholz v. Bd. of Adjustment of Bremer Cnty.*, 199 N.W.2d 73, 75 (Iowa 1972)). "The purpose of the special use permit is to bring flexibility to the rigid restrictions of a zoning ordinance, while at the same time controlling troublesome or somewhat incompatible uses by establishing, in advance, standards that admit the use only under certain conditions and standards that must be met." *Willett v. Cerro Gordo Cnty. Zoning Bd. of Adjustment*, 490 N.W.2d 556, 560 (Iowa 1992).

Before granting a special use permit, the Milford municipal code requires the Board to make several findings to ensure the special use will not improperly affect nearby properties. Milford, Iowa, Zoning Ordinance § 21.5 (2021).[2] The

---

[2] The city's Zoning Ordinance section 21.5 states:
> The Board of Adjustment shall grant no special exception permit unless such Board shall find:
> 1) That the establishment, maintenance, or operation of the special exception use will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare of the city.
> 2) That the special exception use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purpose already permitted, nor substantially diminish and impair property values within the neighborhood.

Brinkleys contend the special exception was issued without substantial evidence

related to Zoning Ordinance section 21.5(1), (2), (9), (12), (13), and (15).  However,

3) That in the case of existing relocated single family dwellings, that the proposed use aesthetically blends in with neighboring permitted uses and special attention be given to the style, size and quality of construction of the proposed use.

4) That adequate utilities, access roads, drainage, parking, and/or necessary facilities have been or will be provided and adequate ingress and egress is so designed as to minimize traffic congestion.

5) The use shall not include any activity involving the use or storage of flammable, or explosive material unless protected by adequate fire fighting and fire suppression equipment and by such safety devices as are normally used in the handling of any such material.

6) The use shall not include noise or vibration that is objectionable to adjoining properties due to volume, frequency, or beat unless muffled or otherwise controlled.

7) The use shall not involve any malodorous gas or matter which is discernable on any adjoining property.

8) The use shall not involve any air pollution by fly-ash, dust vapors, or other substance which is harmful to health, animals, vegetation or other property by causing soiling, discomfort or irritation.

9) The use shall not involve any direct or reflected glare that is visible from any adjoining property or from any public street, road, or highway.

10) The use shall not involve any activity substantially increasing the movement of traffic on public streets unless procedures are instituted to limit traffic hazards and congestion.

11) The use shall not involve any activity substantially increasing the burden on any public utilities or facilities unless provisions are made for any necessary adjustments.

12) That the use will not be in conflict with the intent and spirit of the city's comprehensive plan.

13) The use shall not interfere with the use or enjoyment of neighboring permitted uses.  If such interference is found, provisions must be made for increased setbacks from property lines or screening of incompatible use by the use of fences or hedges.

14) The use shall not cause any permanent, irreparable environmental damage to the parcel or neighboring lands.

15) The special exception use permit may be reviewed after a specified period of time for compliance and for possible additional conditions.

the only specific complaint relates to the impact of glare from vehicles at night. According to the Brinkleys, the glare and adjacent school property will be detrimental to the comfort of the public, injurious to the use and enjoyment of other property, substantially diminish and impair property values, involve use of direct or reflected glare, and interfere with the use and enjoyment of neighboring permitted uses.

To address these requirements and the Brinkleys' complaints, the Board conditioned OCSD's permit on planting and maintaining a vegetative screen around the Brinkleys' property.[3]  The Brinkleys argue this condition is inadequate because OCSD may wait twelve months after substantial completion of the construction before finishing the vegetative screen.  This condition provides their property with no guarantee of vegetative protection during the planned year—or possibly more—of construction plus another year of OCSD's use of the new construction.  Furthermore, the Brinkleys assert OCSD's ongoing failure to comply with the Board's 2004 condition to plant and maintain a vegetative screen[4]—and the Board's failure to enforce the condition—raises serious doubts about whether OCSD will ever complete the vegetative screen.

---

[3] During the meeting, OCSD's superintendent presented a diagram showing planned vegetation to the north, west, and south of the Brinkleys' property that he believed was acceptable to the Brinkleys.  The superintendent also stated OCSD planned to install this vegetation.  The city's attorney stated the city, OCSD, and the Brinkleys agreed on a vegetation plan.

[4] The Board asserts OCSD partially complied with the 2004 decision, stating OCSD previously planted vegetation around parts of the Brinkleys' property and they currently have vegetation throughout the property.  However, there is no dispute OCSD never planted and maintained a full vegetative screen around the north, west, and south of the Brinkleys' property as required in the 2004 decision.

During the June 2021 meeting, the Board discussed several reasons for delaying the vegetative screen for up to twelve months after substantial completion of construction. The Board observed OCSD may be unable to find and plant the required vegetation before beginning construction a few weeks after the meeting. The Board also discussed if OCSD plants a partial screen before construction, they may not be able to find the same vegetation when the time comes to complete the screen, resulting in mismatched vegetation. The construction project may also impact the area where vegetation would be planted, requiring at least a partial removal and rebuild of the screen. Providing OCSD with a full twelve months to finish the screen after substantial completion of construction allows OCSD to plant vegetation during the optimal time of year.

OCSD gave the Board several reasons to further delay the vegetative screen. While we sympathize with the Brinkleys' struggle to compel OCSD to install the required vegetative screen, the 2004 Board decision is not before us. Our task is to determine if the Board's current decision to delay the vegetative screen until twelve months after substantial completion of construction is reasonable and supported by substantial evidence. *See Ames 2304*, 924 N.W.2d at 867.

We acknowledge OCSD's reasons for further delaying the vegetative screen was entirely a function of OCSD's failure to previously install the screen, as required by the 2004 Board decision. In other words, if the vegetative screen were already in place pursuant to the 2004 decision, OCSD would face the same issues with potentially needing to move vegetation and match new plants with existing plants to accommodate the new construction. However, the Board was put into a

position of authorizing needed school improvements and construction while trying to accommodate the needs of the Brinkleys and the public. Although we may have chosen a different timetable for OCSD to comply with the planting of the vegetation screen, to do so would result in substituting our opinion for the decision of the Board.

Looking solely at the Board's current decision, we find this delay reasonable and supported by substantial evidence.

*B. Other Illegality.*

The Brinkleys also complain that the Board's failure to enforce the 2004 special permit with a similar obligation to install a vegetation screen constitutes a violation of the city's Zoning Ordinance sections 21.4(5) and 21.6. Accordingly, the Brinkleys argue the Board failed to follow the procedures and standards set for the in the City's ordinances to issue a special permit and acted illegally.

The Board may not issue a special use permit unless it followed certain procedures, Zoning Ordinance section 21.4(5):

> In granting any special exception, the Board of Adjustment may prescribe appropriate conditions and safeguards in conformity with this ordinance. Violation of such conditions and safeguards, when made a part of the terms under which the special exception is granted, shall be deemed a violation of this ordinance and punishable under Article XIX of this ordinance.

Section 21.6 provides:

> REVOCATION. The issuance of a special exception use permit by the Board of Adjustment shall entitle the owner to continue to operate the use so long as the owner remains in compliance with the terms and conditions of this ordinance and the terms, conditions, limitations, requirements and safeguards set forth in the special exception use permit, if such a permit is granted, does expressly grant to the city, for the enforcement of this ordinance, the power and authority to enter upon the premises at any reasonable time for the

purpose of inspection and enforcement of the terms of this ordinance
or of the terms of the special exception use permit.

However, we view the Brinkleys' arguments as akin to a collateral attack on the Board's 2004 decision.

At least prior to the Board's current grant of a special use permit, mandamus action could have provided a vehicle for the Brinkleys to compel OCSD to comply with the 2004 decision pursuant to Zoning Ordinance sections 21.4(5) and 21.6. *See, e.g.*, *Paulson v. City of Ventura*, No. 09-1908, 2010 WL 3894615, at *5 (Iowa Ct. App. Oct. 6, 2010) ("[The city] decided to take no action to enforce its zoning code. Mandamus is proper to compel the city to act.").

Here, the Board could have required OCSD to immediately install a vegetative screen as a condition for the current special use permit. But the Board did not act illegally or unreasonably by requiring a vegetative screen twelve months after substantial completion of construction as a condition for the current special use permit under these circumstances. *See Ames 2304*, 924 N.W.2d at 867. Although the City had an obligation to enforce its zoning requirements, such duty does not equate to an illegality. Further unlike *Paulson*, 2010 WL 3894615, at *5, where the city resisted enforcing a zoning ordinance, here the Board reimposed the school's obligation to establish a vegetative screen and fixed a date to comply. Whether the Board's current decision can be described as modifying, superseding, reimposing, or reconfirming its 2004 decision does not matter as there is no Board declaration of a violation or revocation of the 2004 special permit in our record. Thus, we cannot conclude the Board's actions were illegal as contrary Zoning Ordinance sections 21.4(5) and 21.6.

**IV. Conclusion.**

We conclude under the circumstances, the Board's decision is supported by substantial evidence and was not illegal, unreasonable, nor arbitrary or capricious. Hopefully OCSD will install the fence or vegetive screen with due speed at the earliest time possible to accommodate the needs of the Brinkleys and the public without further litigation.[5]

We affirm the district court's annulment of the Brinkleys' writ of certiorari.

**AFFIRMED.**

---

[5] During oral arguments, we inquired into whether the issues in this case were moot. *See Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 649 (Iowa 2021) ("[A]n appellate court has responsibility *sua sponte* to police its own jurisdiction." (quoting *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014))). However, we were informed the construction was ongoing and the vegetative screen not yet planted. *See Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) ("An appellate court may consider matters technically outside the district court record in determining a question of mootness."). Although some of the relief sought by the Brinkleys was moot—especially planting the screen before construction began— the relief of immediate planting remained at issue.