Bernard MAUK, Appellant,

v.

STATE of Iowa DEPARTMENT OF
HUMAN SERVICES, Appellee.

No. 97–922.

Supreme Court of Iowa.

Oct. 11, 2000.

Bernard Mauk, *pro se*, Pleasant Hill, appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee.

McGIVERIN, Chief Justice.

Petitioner Bernard Mauk seeks further review of a decision of the court of appeals, which upheld a refusal by respondent Iowa Department of Human Services (DHS) to correct an entry in the state child abuse registry concerning an allegation of child abuse by Mauk of his daughter L.M.

Upon our review, we conclude that the administrative law judge (ALJ) erred in refusing to allow Mauk to call his daughter L.M. and son J.M. to testify at a hearing concerning Mauk's request for correction of information in the child abuse registry. We therefore vacate the court of appeals decision, and reverse the judgment of the district court with instructions to remand the case to the DHS for a new hearing, at which time petitioner shall be allowed to call L.M. and J.M. as witnesses.

## I.   Background facts and proceedings.

Petitioner Bernard Mauk is the father of a female child, L.M.

On September 12, 1988, the DHS was contacted by Diana Cornish who alleged that her three and one-half-year-old daughter, L.M., had been sexually abused by her ex-husband, Bernard Mauk. The allegations were based on information L.M. told to her step-father, Brian Cornish. Upon receipt of this information, the DHS began an investigation concerning the alleged incident of abuse. *See* Iowa Code § 232.71 (1987)[1] (discussing duties of DHS concerning investigation of report of alleged child abuse, now codified at Iowa Code § 232.71B (1999)).

During the investigation, DHS child protective investigator, Connie MacLellan, attempted to arrange an interview with Mauk through his attorney. The parties could not agree, however, on a location for the interview and none was ever held.

Upon completion of the investigation, MacLellan concluded that the complaint of child abuse of L.M. by Mauk, specifically lascivious acts with a child, was "founded." As a result, on September 26, 1988, the DHS filed its findings of "founded" child abuse by Mauk with the Iowa Child Abuse Registry. *See* Iowa Code § 232.71(8) (now codified at Iowa Code § 232.71D(3) (1999)).

Thereafter, in 1989, Mauk filed a request to correct information in the child abuse registry. *See id.* § 235A.19(2) (outlining procedure concerning request for correction of information in child abuse registry or of findings of child abuse investigation). The DHS denied Mauk's request. Mauk then filed an appeal and was granted an evidentiary hearing. Due to numerous postponements, however, a hearing before an ALJ was not held until September 13, 1995.

Prior to the September 13, 1995, hearing, Mauk caused subpoenas to be issued for L.M., who was then eleven, and for his son J.M., to appear and testify at the hearing before the ALJ. The ALJ in 1995, however, granted the DHS's motion to

---

1.  All code section citations are to the 1987    Code unless otherwise indicated.

quash the subpoenas, based on the ALJ's finding that L.M.'s memory of the alleged incident, which happened seven years previously, would not be reliable. The ALJ also stated that J.M., who was seven years old at the time of the alleged incident, had no knowledge of any abuse of his sister by Mauk. The ALJ also noted that administrative hearings are stressful and stated that "[t]o subject children to such a hearing when their testimony would provide minimal information would not be in their best interests."

At the evidentiary hearing before the ALJ, Diana, mother of L.M., and three health care professionals testified concerning what L.M. allegedly told them in 1988 regarding the alleged incident of abuse. Mauk cross-examined each witness. Brian Cornish's deposition was also introduced during the hearing. Mauk testified, but L.M. did not.

The ALJ concluded that the abuse report concerning Mauk should not be corrected. On appeal, the ALJ's proposed decision was later adopted by the DHS as the agency's final decision.

Thereafter, Mauk filed a petition for judicial review in district court, seeking review of the agency's decision. *See id.* § 235A.19(3) (outlining procedure for review of DHS's decision by judicial review in district court pursuant to Iowa Code chapter 17A). The court upheld the DHS's refusal to correct information in the child abuse registry.

Upon Mauk's appeal, we transferred the case to the court of appeals, which affirmed the district court's judgment.

We granted Mauk's application for further review.

## II. Standard of review.

In this administrative proceeding, our review is governed by Iowa Code section 17A.19(8). *See* Iowa Code § 235A.19(3) (stating that appeal from denial of a request for correction of information or findings of child abuse investigation

shall be taken in accordance with Iowa Code chapter 17A). In reviewing the district court's decision in this case, we apply the standards of section 17A.19(8) to the agency's action to determine whether our conclusions are the same as those of the district court. *IBP, Inc. v. Iowa Employment Appeal Bd.*, 604 N.W.2d 307, 311 (Iowa 1999). In doing so, we may reverse, modify, or grant any other appropriate relief from the agency action if substantial rights of the petitioner have been prejudiced because of such action. Iowa Code § 17A.19(8). "[W]e accord limited deference to the agency's interpretation of law, including statutory interpretation." *McCracken v. Iowa Dep't of Human Serv.*, 595 N.W.2d 779, 783 (Iowa 1999). The agency's findings of fact are binding on us if supported by substantial evidence when the record is viewed as a whole. *IBP, Inc.*, 604 N.W.2d at 311. Evidence is substantial if a reasonable person would find it adequate to reach a conclusion. *Id.*

## III. Iowa child abuse registry, Iowa Code chapter 235A.

The Iowa child abuse information registry, found within the Iowa Department of Human Services, is the central registry for child abuse information. Iowa Code § 235A.14(1); *see also id.* § 232.68(5) (defining "registry"). Iowa Code chapter 235A outlines the procedure for filing a request to correct information in the child abuse registry. We have explained the purpose of the child abuse registry as follows:

> Under the statutory scheme of chapter 235A, DHS is charged with responsibility to organize and staff a registry for the collection, maintenance and dissemination of child abuse information. Iowa Code § 235A.14(1), (2). The purpose of the registry is to aid the research and identification of victims or potential victims of child abuse through one statewide source of data. Iowa Code § 235A.12. The statute is also designed to provide safeguards against the un-

warranted invasion of privacy which such registry might otherwise entail. *Id.*

*Reynolds v. Iowa Dep't of Human Serv.*, 493 N.W.2d 813, 815 (Iowa 1992).

When a report of abuse is made, the DHS is obliged to promptly commence an appropriate investigation concerning the reported allegation of abuse. Iowa Code § 232.71(1). Upon completion of its investigation, the DHS shall prepare a report of its investigation, *see id.* § 232.71(7), and transmit a copy of the report, including actions taken or contemplated, to the child abuse registry, *see id.* § 232.71(8).

Additionally, the DHS must "notify a subject of the report of the result of the investigation, of the subject's right to correct the information pursuant to section 235A.19, and of the procedures to correct the information." *See id.* § 232.71(7). A request to correct information in the child abuse registry or the findings of the child abuse investigation must be filed within six months of the date that the subject of the report receives notice of the results of the child abuse investigation. *See id.* § 235A.19(2). "The department shall provide the person with an opportunity for an evidentiary hearing pursuant to chapter 17A to correct the information or the findings . . . ." *Id.* The decision resulting from the hearing before the DHS may be appealed to district court by filing a petition for judicial review pursuant to Iowa Code chapter 17A. *See id.* § 235A.19(3).

## IV. Requested testimony of victim at agency hearing.

### A. Mauk's contentions and the agency's decision.

Prior to the September 13, 1995, hearing, the ALJ sustained the DHS's motion to quash subpoenas issued for Mauk's daughter L.M. and for his son J.M., based on the ALJ's conclusion that L.M.'s memory of the alleged incident that occurred seven years previously, and when she was three and one-half years old, would not be

reliable. The ALJ also commented that administrative hearings are stressful and that "[t]o subject children to such a hearing when their testimony would provide minimal information would not be in their best interests." Mauk argues that the ALJ's action in quashing the subpoenas deprived him of his right to due process and a fair hearing guaranteed by the Fourteenth Amendment to the United States Constitution and applicable statutory and agency rules.

### B. Applicable law.

■ Mauk's evidentiary hearing before the ALJ, provided by Iowa Code section 235A.19(2), was a contested case proceeding. *See Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 766 (Iowa 1998) (stating the rule that a hearing is a contested case if the constitution or a statute requires an evidentiary hearing). Accordingly, the hearing was governed by the procedural rules listed in Iowa Code sections 17A.12 and 17A.13. Specifically, Mauk was entitled to present evidence and argument on all issues involved, *see* Iowa Code § 17A.12(4); Iowa Admin. Code r. 441—7.13(2) (regarding conduct of administrative hearing; party shall have right to introduce any evidence on points at issue); Iowa Admin. Code r. 441—7.13(3) (stating that party shall have opportunity to respond and present evidence and arguments on all issues involved), and had the right to cause subpoenas to be issued, *see* Iowa Code § 17A.13(1) ("Agency subpoenas shall be issued to a party on request."); Iowa Admin. Code r. 441—7.12 (departmental subpoenas shall be issued to a party upon request). Additionally, Mauk had the same rights to discovery as applicable to civil actions. *See* Iowa Code § 17A.13(1) ("Discovery procedures applicable to civil actions are available to all parties in contested cases before an agency."); *accord Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 858 (Iowa 1995). These procedural rules are in place to ensure that a party to an administrative

hearing is afforded due process, *i.e.,* that the party is given adequate notice and an opportunity to defend concerning the action of an agency. *See Alfredo v. Iowa Racing & Gaming Comm'n,* 555 N.W.2d 827, 833 (Iowa 1996).

## C. Application of legal principles.

■ We concluded in *In re E.H. III,* 578 N.W.2d 243, 246 (Iowa 1998), that a father's Sixth Amendment right of confrontation, *see* U.S. Const. amend. VI, did not apply to a civil child in need of assistance (CINA) proceeding and thus, the father had no constitutional right to call his children as witnesses at a hearing concerning the State's motion for a "no contact" order against the father. *See also In re L.K.S.,* 451 N.W.2d 819, 822 (Iowa 1990) (holding there is no Sixth Amendment right to confrontation in CINA proceedings). We further concluded that the trial court had discretion to determine that a child need not be called as a witness when the best interests of the child militated against use of the child's testimony in juvenile court. *E.H. III,* 578 N.W.2d at 246.

Following our reasoning in *E.H. III,* Mauk did not have a constitutional Sixth Amendment right to confront L.M. or to call her as a witness in the hearing before the ALJ. Accordingly, Mauk's constitutional right to confrontation of witnesses was not infringed.

■ We reach a different result, however, with respect to whether the ALJ's decision, that causing L.M. and J.M. to testify during the agency hearing would not be in their best interests, is supported by substantial evidence. The ALJ quashed the subpoenas for Mauk's children, in part, based on its finding that "[t]o subject [the] children to such a hearing when their testimony would provide minimal information would not be in their best interests." In other words, the ALJ concluded that Mauk was not entitled to exercise his right under statutory and agency rule provisions to call witnesses, based on the ALJ's finding that

causing the children to testify would not be in their best interests.

Upon our review, we conclude that substantial evidence does not exist in the record in this case to support the ALJ's ruling quashing the subpoenas. First, the ALJ's ruling, which was adopted by the DHS, does not cite specific evidence in the record by any of the professionals who examined L.M. as support for the conclusion that causing L.M. to testify would not be in her best interests or would otherwise be traumatic. More importantly, the ALJ did not consider L.M.'s current psychological development at the time of the hearing in 1995, which was held seven years after the alleged incident occurred. Instead, the ALJ simply commented in general about the stress children may experience in testifying in such situations. Additionally, the extent of L.M.'s memory of the alleged incident would best be determined by calling her to testify, rather than by assuming what she remembered and what she did not. For these reasons, J.M. also should be allowed to testify, although it appears he may have little knowledge of the alleged incident.

We therefore conclude that the ALJ's reason for quashing the subpoenas is not supported by substantial evidence in the record. We also find no other reason for the ALJ's refusal to allow Mauk to exercise his right under statutory and agency rule provisions to call witnesses to testify at the evidentiary, contested case hearing. Due to the above conclusions, we need not address whether Mauk's right to constitutional due process under the Fourteenth Amendment has been infringed. Accordingly, we reverse the judgment of the district court upholding the agency's ruling on this issue.

Because we conclude that Mauk should be allowed to call L.M. and J.M. to testify concerning the alleged incident, we also believe that Mauk's assignment of error concerning his request to admit into evidence a videotape of his interview with his children is moot.

## V. Disposition.

Upon our review, we also find it unnecessary to address other contentions raised by Mauk because error was either not preserved or the contentions are without merit. No reversible error exists as to those assignments.

We conclude that the ALJ, whose decision was affirmed by the agency, erred in quashing Mauk's subpoenas to require his daughter L.M. and son J.M. to testify at the hearing concerning his request to correct information in the child abuse registry.

We vacate the decision of the court of appeals and reverse the judgment of the district court. The case is remanded to the district court with directions to remand the case to the Department of Human Services for allowance of subpoenas for Mauk's daughter L.M. and son J.M. to require their testimony at a new hearing before the agency.

At such hearing, the agency shall consider the testimony of L.M. and J.M. along with the evidence received at the 1995 hearing and make a new ruling concerning Mauk's request for correction of information in the Iowa child abuse registry. We express no opinion as to the merits of Mauk's request.

Costs on appeal are taxed to the appellee.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except SNELL, J., who takes no part.