# IN THE COURT OF APPEALS OF IOWA

No. 13-1778
Filed October 15, 2014

**HILL CONCRETE and THE ACCIDENT FUND
INSURANCE CO. OF AMERICA,**
        Plaintiffs-Appellants,

**vs.**

**JEFFREY W. DIXSON,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.


        Hill Concrete appeals the district court's decision affirming the Iowa

Workers' Compensation Commissioner's award of healing period benefits.

**AFFIRMED.**


        Christopher Spencer, Mark Bosscher, and Joseph M. Barron of Peddicord,

Wharton, Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for

appellants.

        Max Schott and Jean Mauss of Schott Mauss & Associates, P.C., Des

Moines, for appellee.


        Heard by Vogel, P.J., Bower, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**VOGEL, P.J.**

Hill Concrete appeals from the Iowa Workers' Compensation Commissioner's award of healing period benefits to Jeffrey Dixson from March 31, 2010, until May 4, 2012, in its review-reopening decision. Hill Concrete asserts the commissioner erred in concluding Iowa Code section 85.34(1) (2011) governs the time period in which healing period benefits can be awarded in a review-reopening proceeding. Hill Concrete argues that healing period benefits should only be awarded when the claimant's condition "warrants" additional benefits, as set forth in Iowa Code section 86.14(2), rather than when the claimant has reached maximum medical improvement, as dictated by section 85.34(1). According to Hill Concrete's position, Dixson should not have been awarded benefits after July 16, 2010, because his condition after this date did not warrant further healing period benefits, given he stated on July 16, 2010, that he was pain free.

As an initial matter, we conclude the timeframe for healing period benefits set forth in Iowa Code section 85.34(1) applies in a review-reopening proceeding that is initiated under Iowa Code section 86.14(2). Consequently, substantial evidence supports the commissioner's award of benefits from March 31, 2010, until May 4, 2012, given the record shows Dixson did not reach maximum medical improvement until May 4, 2012. Consequently, Dixson was properly awarded healing period benefits until this date, and we affirm the decision of the district court, which affirmed the commissioner.

**I. Factual and Procedural Background**

Jeffrey Dixson, born in 1958, was employed as a concrete finisher at Hill Concrete. On April 14, 2006, Dixson stepped from a stair rise into a rut, injuring his right hip. Greg Mahoney, M.D., diagnosed him with a labrum tear. Dr. Mahoney performed an arthroscopic debridement of the right hip labrum on November 2, 2006, but Dixson did not experience any pain relief. Dixson returned to work at Hill Concrete for approximately two weeks in early 2007, but then left due to pain. On February 12, 2008, Dr. Mahoney noted that radiographs showed osteoarthritis in the hip, which was aggravated subsequent to Dixson's injury. He concluded Dixson was at maximum medical improvement (MMI) as of March 1, 2007,[1] without the hip replacement.[2]

John Kuhnlein, D.O., performed a medical examination on February 22, 2008, and concluded Dixson should be restricted from lifting anything heavier than thirty pounds and should not stand more than one-third of a work shift.[3] In 2008, Dixson was working three nights as a bartender for five hours each night, which was within his medically-determined physical capacity. Consequently,

---

[1] One letter by Dr. Mahoney placed Dixson at MMI on March 1, 2007, though another letter dated February 12, 2008, stated Dr. Mahoney placed Dixson at MMI as of January 18, 2008.

[2] Dr. Mahoney noted, in a letter dated February 12, 2008, that Dixson was likely to require a full hip replacement. Todd McKinley, M.D., following an evaluation of Dixson on May 23, 2008, stated Dixson "would be best served with a total hip arthroplasty when his pain warranted."

[3] Specifically, Dr. Kuhnlein concluded Dixson was restricted to lifting a maximum of twenty pounds from floor to waist level, thirty pounds from waist to shoulder level, and twenty pounds over the shoulder. Dixson was also restricted from standing for more than one-third of a work shift, only occasionally stooping, bending, or crawling, and could not work off of level ground. Dr. Kuhnlein's opinion is more restrictive than the previous independent medical examination performed December 5, 2007, which limited Dixson's capacity to lifting no more than sixty-five pounds with two hands from nineteen inches to waist level, and thirty-three pounds from floor to waist and waist to shoulder.

Dixson and Hill Concrete entered into a settlement on May 30, 2008, stipulating to a 55% industrial disability, with the healing period from August 6, 2006, until June 2, 2007. The settlement was subject to a review-reopening hearing "three years following the last date that weekly compensation is paid."

On February 5, 2010, Dixson complained to Dr. Mahoney that he had significant hip pain. A right total hip arthroplasty was performed on March 31, 2010. On May 14, 2010, Dixson reported to Dr. Mahoney that he was considerably improved with regard to his overall level of pain. Dixson told Dr. Mahoney on July 16, 2010, that he had no complaints with respect to his hip and the doctor noted he walked with a nonantalgic gait. Consequently, Dr. Mahoney released him to "modified work," though he advised Dixson should avoid repetitive squatting and recommended a follow-up appointment in nine months, with repeat x-rays. After assessing Dixson's work capacity in April 2011, Dr. Mahoney took him wholly off work, due to the fact Dixson's weight loss served to weaken him, and Dr. Mahoney had concerns he would fall if allowed to work.[4] When asked if this decision was related to Dixson's hip problem, Dr. Mahoney stated:

> At that point I was concerned about his ability to get around and as it relates to could he be exposed to falls at work, could he be weak at work. So at that point I told him I didn't think it was a good thing to work. So I think it's both things. You know, if he was in and he didn't have any other orthopedic issues and I hadn't done hip replacement on him, it really wouldn't be my role to take him off work. But as connected to his hip replacement, given the whole picture of the patient, I felt it was probably safer for him not to [work].

---

[4] Between April and July 2010, Dixson developed cancer and began treatment, which caused his weight loss of approximately eighty pounds.

On May 4, 2012, Dr. Mahoney noted Dixson had lost about 100 pounds, he had occasional pain, and he walked with a nonantalgic gait. Dr. Mahoney therefore concluded Dixson was at MMI. Dixson was approved for modified work with a twenty-pound lifting restriction and the recommendation to avoid repetitive squatting.

On April 6, 2010, Dixson filed a petition for a review-reopening of his case with the Iowa Workers' Compensation Commissioner. A hearing was held on May 16, 2012, and Dixson was awarded additional healing period benefits from March 31, 2010, through May 4, 2012. The commissioner affirmed the deputy's proposed decision on May 23, 2013, and following a hearing on August 30, 2013, the district court affirmed the commissioner. Hill Concrete appeals, asserting that because Dixson stated he was pain free as of July 16, 2010, the commissioner erred in awarding benefits after July 16. Specifically, it asserts that Iowa Code section 86.14(2) "does not allow for continued healing period benefits once there has been a removal of the change of condition that warranted a re-initiation of healing period benefits in the first place."

## II. Standard of Review

To the extent we are reviewing the commissioner's interpretation of Iowa Code section 86.14(2), and the interaction between this section and section 85.34(1), "[t]he level of deference afforded to an agency's interpretations of law depends on whether the authority to interpret that law has 'clearly been vested by a provision of law in the discretion of the agency.'" *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (comparing Iowa Code § 17A.19(10)(c), with *id.* § 17A.19(10)(*l*)). If the agency has not been clearly vested with the authority

to interpret a provision of law, such as a statute, then the reviewing court must reverse the agency's interpretation if it is erroneous. *See* Iowa Code § 17A.19(10)(c). If the agency has been clearly vested with the authority to interpret a statute, then we may only disturb the interpretation if it is "irrational, illogical, or wholly unjustifiable." *See id.* § 17A.19(10)(*l*). Because there is no basis in the Iowa Code or our case law indicating the commissioner has been vested with the authority to interpret the intersection between Iowa Code sections 86.14(2) and 85.34(1), we review the interpretation for correction of errors at law. *See Burton*, 813 N.W.2d at 257.

With regard to the commissioner's award of healing period benefits, our review is governed by Iowa Code chapter 17A. *See* Iowa Code § 86.26. The commissioner's conclusions of law are binding if supported by substantial evidence when the record is viewed as a whole. *See id.* § 17A.19(10)(f). Evidence is substantial if a reasonable person would find it adequate to reach the same conclusion. *U.S. W. Commc'ns., Inc. v. Overholser*, 566 N.W.2d 873, 875 (Iowa 1997).

**III. Award of Healing Period Benefits**

Under Iowa Code section 86.14(2), a reopening of an agreement for settlement requires that "the condition of the employee warrants an end to, diminishment of, or increase of compensation." The review-reopening claimant bears the burden of showing his condition has changed since the original settlement was made. *Blacksmith v. All Am. Inc.*, 290 N.W.2d 348, 350 (Iowa 1980). "To justify an increase in compensation benefits, the claimant carries the burden of establishing by a preponderance of the evidence that, subsequent to

the date of the award under review, he or she has suffered an impairment or lessening of earning capacity proximately caused by the original injury." *Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999).

Iowa Code section 85.34(1) governs the award of healing period benefits, stating:

> If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable as provided in subsection 2 of this section, the employer shall pay to the employee compensation for a healing period, as provided in section 85.37, beginning on the first day of disability after the injury, and until the employee has returned to work *or* it is medically indicated that significant improvement from the injury is not anticipated *or* until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

(Emphasis added.)

In the context of a review-reopening proceeding under section 86.14(2), we find no support in either the Iowa Code or our case law indicating section 85.34(1) does not govern the timeframe in which healing period benefits can be awarded. When interpreting a statute, we determine the legislative intent behind the statute. *Zimmer v. Vander Waal*, 780 N.W.2d 730, 733 (Iowa 2010). "When the statute's language is plain and unambiguous, we will look no further." *Id.* Section 86.14 states an "inquiry shall be into whether or not the condition of the employee warrants . . . [an] increase of compensation so awarded or agreed upon." Hill Concrete concedes such inquiry was favorable to Dixson when he proved the need for hip replacement surgery.

Chapter 85 then applies to determine the type of benefits owed—in this case, healing period benefits, which are governed by section 85.34(1). There is

no indication in section 86.14(2) that the standard for the award of benefits changes in a review-reopening proceeding; it would, in fact, be illogical to define a new set of standards with respect to the award of healing period benefits in the review-reopening context. *See Holstein Elec. v. Breyfogle*, 756 N.W.2d 812, 815–16 (Iowa 2008) ("The legislature enacted the workers' compensation statute primarily for the benefit of the worker and the worker's dependents . . . . We will not defeat the statute's beneficent purpose by reading something into it that is not there, or by a narrow and strained construction." (citations omitted)). We therefore conclude the commissioner properly determined section 85.34(1) governs when healing period benefits may be awarded in a review-reopening proceeding.

Because section 85.34(1) governs when healing period benefits can be awarded in a review-reopening proceeding, the commissioner properly concluded the benefits should end on May 4, 2012, the date Dixson reached MMI. At Dr. Mahoney's deposition, when asked if Dixson's lack of pain placed him at MMI as of July 16, 2010, the following exchange occurred:

> Q: You would say that maximum medical improvement probably was back here on July 16, 2010? I mean, it sounds like you're releasing him. A: I would say in the absence—I have a date of surgery of 3/31 in '10. Is that true?
> Q: 3/31, right. A: So I would say in the absence of another medical problem, that usually MMI for a joint replacement occurs between one and two years after surgery. And that's just based on people's subjective characterizations of their joint replacements; when is it functioning at its peak. And I usually give patients a one-to-two year time frame on that.
> Because there are things—proprioceptive capabilities, muscle strength, those types of things which can still improve at that time period. So a formal MMI, if someone is saying on the front side, in the absence of any other medical condition, I would say one to two years after surgery.

Given this opinion, the record supports the commissioner's conclusion healing period benefits should continue until Dixson reached MMI on May 4, 2012, rather than on July 16, 2010, as Hill Concrete argues. Because as of May 4, 2012, it was "medically indicated that significant improvement from the injury is not anticipated," *see* Iowa Code section 85.34(1), the commissioner properly awarded benefits from March 31, 2010, until May 4, 2012. *See Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 9 (Iowa 2012) ("Among the other indicators of the end of a healing period is the employee's achievement of MMI."); *Armstrong Tire & Rubber Co. v. Kubli*, 312 N.W.2d 60, 65 (Iowa Ct. App. 1981) ("[T]he healing period generally terminates at the time the attending physician determines that the employee has recovered as far as possible from the effects of the injury." (internal citation omitted)).

Upon reviewing Hill Concrete's arguments, we affirm the district court's order,[5] which affirmed the commissioner's decision.

**AFFIRMED.**

---

[5] We note, however, that the district court's recitation of the standard of review and whether the commissioner is vested with the authority to interpret Iowa Code sections 85.34(1) and 86.14(2) are not accurate. Consequently, we only affirm the portion of the court's decision that affirms the commissioner.