**IN THE COURT OF APPEALS OF IOWA**

No. 15-1769
Filed December 21, 2016

**UNITED FIRE & CASUALTY COMPANY,**
       Plaintiff-Appellant,

**vs.**

**CEDARS SINAI MEDICAL CENTER and SEQUETOR, INC.,**
       Defendants-Appellees.
_____

       Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


       An insurer appeals a judicial review order affirming the medical-fee

determination of the workers' compensation commissioner.  **AFFIRMED.**


       Sasha L. Monthei of Scheldrup Blades Schrock Smith P.C., Cedar Rapids,

for appellant.

       Jane V. Lorentzen and Chandler L. Maxon of Hopkins & Huebner, P.C.,

Des Moines, for appellees.


       Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

An Iowa insurer contests a determination by the workers' compensation commissioner that a California hospital properly charged more than three million dollars in medical fees following its extended treatment of a severely injured construction worker. Because they disagreed over the reasonable cost of the worker's care, the parties engaged in the informal dispute resolution procedures set out in Iowa Code section 85.27(3) (2013) and Iowa Administrative Code rule 876-10.3. On appeal, United Fire & Casualty Company challenges several aspects of those procedures, as well as the commissioner's order that it pay $2,266,089.20 to Cedars-Sinai Medical Center on top of the $940,195.81 already reimbursed by the insurer.

United Fire urges four arguments on appeal. First, the insurer alleges the commissioner committed procedural errors in selecting and retaining the medical-fee reviewer, refusing to allow United Fire to offer evidence related to several legal issues, and accepting additional evidence and amended filings from Cedars-Sinai and Sequetor, Inc., the company Cedars-Sinai hired to recoup the outstanding fees. Second, United Fire contends Sequetor did not have standing to initiate the medical-fee review. Third, the insurer claims Cedars-Sinai is not entitled to additional reimbursement because United Fire's previous payments were an accord and satisfaction. Finally, United Fire argues the medical-fee resolution approved by the commissioner and affirmed by the district court was irrational and illogical. Because United Fire failed to preserve error on several of its claims and cannot show it is entitled to repeat the medical-fee dispute process, we affirm the judicial review order.

## I.    Facts and Prior Proceedings

On March 19, 2010, twenty-two-year-old Cody Mills was working on a California construction project for Alan Stevens Associates, Inc., an Iowa company insured by workers' compensation carrier United Fire. Mills fell twenty-five feet from scaffolding and landed face first on a cement surface. Mills was transported to Cedars-Sinai, a Los Angeles hospital, where he received treatment for his catastrophic head injuries. Over the course of his 131-day hospital stay, Mills endured more than twenty surgical procedures, including two craniotomies. Mills required care from the neurosurgical intensive care unit until April 2010. The hospital discharged Mills on July 28, 2010, and delivered a medical bill totaling $5,314,001.96 to United Fire.

United Fire submitted the hospital bill to its reviewing agency, Alpha Review, which applied the California Official Medical Fee Schedule (OMFS) in setting the reimbursable amount at $939,455.03. United Fire sent a check in that amount to Cedars-Sinai on October 11, 2010. After receiving that initial payment from United Fire, Cedars-Sinai authorized Sequetor to pursue recovery of the remaining balance on Mills's medical bill. Approximately one year later, Alpha Review reexamined the billing, at the hospital's request, and recommended reimbursement of an additional $740.78 for an orthopedic device, which United Fire paid to Cedars-Sinai on November 2, 2011.

On June 22, 2012, Sequetor—on behalf of Cedars-Sinai—sought a medical-fee determination under the informal dispute resolution process laid out

in Iowa Code section 85.27(3)[1] and Iowa Administrative Code rule 876-10.3.[2]  In a letter to Penny Maxwell, a compliance administrator with the Iowa Workers' Compensation Commission, Sequetor notified the agency of its intent to use the 10.3-review process in its capacity as Cedar-Sinai's "authorized representative." Sequetor nominated David Stamp, an Iowa attorney, as the person to do the medical fee review but did not provide any details about Stamp's qualifications for the position.

United Fire responded by letter dated August 15, 2012, and addressed to Maxwell and Deputy Commissioner James Christenson.  Counsel for the insurer stated in the letter he had planned to file a motion asking the agency to set deadlines for the 10.3 procedure but learned from a telephone conversation with

---

[1] Iowa Code section 85.27(3) states, in relevant part:
> [C]harges believed to be excessive or unnecessary may be referred by the employer, insurance carrier, or health service provider to the workers' compensation commissioner for determination, and the commissioner may utilize the procedures provided in sections 86.38 and 86.39, or set by rule, and conduct such inquiry as the commissioner deems necessary. . . .  A health service provider rendering treatment to an employee whose injury is compensable under this section agrees to be bound by such charges as allowed by the workers' compensation commissioner and shall not recover in law or equity any amount in excess of charges set by the commissioner. . . .  A health service provider shall not seek payment for fees in dispute from the insurance carrier or employer until the commissioner finds, pursuant to informal dispute resolution procedures established by rule by the commissioner, that the disputed amount is reasonable.

[2] Rule 876-10.3(3)(d) states:
> If the provider does not agree to accept the amount of the charge the responsible party agrees to pay, . . . . [t]he provider and the responsible party shall submit the dispute to a mutually agreed upon person for review. . . .  If the provider and the responsible party cannot agree upon the person to make the review, they shall, within 90 days of time the provider notified the responsible party of the disagreement, each recommend to the workers' compensation commissioner one person to do the review. . . .  The selected person or persons shall review information submitted by the provider and the responsible party and make a determination.

Maxwell that formal motions would not be entertained. So United Fire instead "submitted [its] positions on scheduling issues via this letter." The letter further stated: "[W]e would like to make the agency aware that although this is an informal medical bill dispute proceeding, this case involves over $4,000,000 in dispute and calls for decisions on complex legal questions which will be addressed through briefing and the informal review process." The letter then listed fifteen legal questions, including inquiries on standing, timeliness, preemption, and choice of law. Finally, United Fire nominated Paul Thune to serve as the reviewer, noting: "Mr. Stamp is primarily a claimants' workers' compensation attorney. Mr. Thune, on the other hand is a highly experienced mediator, and also has much experience representing both claimants and defendants in agency matters."

Maxwell rejected United Fire's request for Thune and informed the parties Stamp had been selected to perform the review. But Stamp contacted Workers' Compensation Commissioner Christopher Godfrey to express concern the informal review process would not resolve the parties' dispute. On October 12, 2012, Stamp advised the parties to file motions raising their legal and procedural issues directly with Commissioner Godfrey. But on December 13, before either party had filed a motion, Commissioner Godfrey directed Stamp to move forward with the review, reasoning: "The issues raised [in United Fire's August 15 letter] . . . do not apply as the process under 876 IAC 10.3 is merely a means to resolve disputed medical fee claims." Godfrey reconsidered United Fire's reviewer nominee but ultimately affirmed the selection of Stamp.

Godfrey stated: "If this process does not resolve the dispute, a contested case proceeding may be filed . . . ." *See* Iowa Admin. Code rr. 876-10.3(4), -4.46. The next day,[3] United Fire filed a "motion for determination of legal issues prior to any review under 876 IAC 10.3," which was rejected by the agency because United Fire had not filed an original notice and petition.[4]

Stamp withdrew as reviewer on January 30, 2013, without explanation. In the months that followed, two more selected reviewers failed to complete the 10.3 process. One withdrew after a misunderstanding with United Fire regarding mediation and another declined appointment. In each instance, the parties submitted their own nominees for a replacement reviewer, and Maxwell picked Sequetor's candidate. Finally, on November 5, 2013, the agency selected Alex Kauffman, the Sequetor nominee who ultimately completed the 10.3 review. United Fire unsuccessfully objected:

> As is made plainly eviden[t] by his affidavit, Mr. Kauffman works for a collections agency, like Sequetor, Inc. who routinely provides collection services for Cedars Sinai Medical Center. . . . While Mr. Kauffman might not contract directly with Cedars Sinai Medical Center, there is an obvious conflict in Mr. Kauffman's serving as the "independent reviewer" in this proceeding as he has an established pattern of financial gain in performing collection work related to medical services provided by Cedars Sinai.

Shortly thereafter, United Fire sent a letter to Kauffman, with a copy to Sequetor, requesting a scheduling conference. A Sequetor representative responded that Kauffman had already completed his review. United Fire, which

---

[3] The certificate of service indicates United Fire mailed the motion on December 13, the date of Commissioner Godfrey's letter. It is unclear in our record whether United Fire had received the commissioner's letter before it sent the motion.

[4] The December 14 motion reiterated several of the questions from the August 15 letter and added the issue of accord and satisfaction.

had not yet submitted information to Kauffman, objected. In a letter to Maxwell and Deputy Christenson, United Fire requested another reviewer replace Kauffman or, alternatively, the agency order Kauffman to refrain from issuing an opinion until taking input from United Fire. Deputy Christenson reaffirmed Kauffman as the reviewer and noted "the attempted resolution of the medical fee dispute in this matter has gone on for well over a year." Christenson gave United Fire fifteen days to submit "objective" materials to Kauffman but found it "inappropriate to submit testimony or briefs" to the reviewer. After United Fire submitted documentation, Kauffman issued his opinion that an additional $2,266,089.20 be reimbursed to Cedars-Sinai.

United Fire initiated a contested case proceeding against Cedars-Sinai and Sequetor. In addition to challenging Kauffman's findings, United Fire raised issues of standing, accord and satisfaction, and reviewer bias. After reviewing the materials provided by the parties, including a competing opinion on the reasonableness of the medical fees offered by an expert for United Fire, Deputy Christenson entered a decision adopting Kauffman's fee determination. Although the deputy found United Fire had not preserved error on accord and satisfaction or standing, Christenson proceeded to address and reject those claims.

On judicial review, United Fire renewed the arguments it had raised before the agency and added claims that Maxwell did not have authority to select the 10.3 reviewers, Maxwell was biased in her reviewer selections, and the agency erred in allowing Cedars-Sinai and Sequetor to submit additional filings. The district court affirmed the agency decision. United Fire now appeals.

## II.    Scope and Standards of Review

Our review of workers' compensation cases is governed by Iowa Code chapter 17A.  *See Hill Concrete v. Dixson*, 858 N.W.2d 26, 30 (Iowa Ct. App. 2014).  We examine the judicial review ruling and consider whether we come to the same conclusions as the district court.  *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 225 (Iowa 2006).  If our conclusions align, we affirm; if not, we reverse.  *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 279 (Iowa Ct. App. 2015).

"[O]ur standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review."  *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012).  United Fire's appellate claims implicate the agency's findings of fact, its application of law to fact, the proper construction of rule 10.3, and the insurer's procedural due process rights.

We defer to the fact findings of the workers' compensation commissioner if they are based on substantial evidence.  *See* Iowa Code § 17A.19(10)(f).  Evidence is substantial when "the quantity and quality of evidence . . . would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance."  *Id.* § 17A.19(10)(f)(1).  In our review, we ask not whether the evidence may support a different finding than that made by the commissioner but whether the evidence supports the finding the commissioner actually made.  *See Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009).

We afford "some degree of discretion" to the agency's application of law to the facts "but not the breadth of discretion given to the findings of fact."  *Meyer*,

710 N.W.2d at 219. When the agency's decision is based on an incorrect interpretation of law, we are not bound by those legal conclusions and may correct them. *See id.*

We defer to the agency's interpretation of law when it has been clearly vested in the agency's discretion by the legislature unless it is "irrational, illogical, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(*l*)–(m). But when the legislature has not clearly vested the agency with that authority, we review for correction of legal error. *See Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). We substantially defer to an agency when it interprets its own regulations, so long as its interpretation does not violate the rule's plain language. *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015).

Finally, to the extent United Fire raises a constitutional claim, our review is de novo. *See ABC Disposal Sys., Inc. v. Dep't of Nat. Res.*, 681 N.W.2d 596, 605 (Iowa 2004).

**III. Preservation of Error**

Cedars-Sinai and Sequetor argue United Fire did not preserve its claims regarding Maxwell's involvement in the reviewer-selection process or her alleged bias because United Fire continued communicating with her during the process and failed to question her involvement in its briefs to the agency. Cedars-Sinai and Sequetor also argue United Fire failed to preserve error on the issues of standing and accord and satisfaction because the contested case proceeding was limited to challenging the 10.3-review process and neither legal issue was raised before the reviewer. *See* Iowa Admin. Code r. 876-4.46(3) ("The issues of

the contested case proceeding shall be limited to the dispute considered in rule 876-10.3 . . . .").

We agree United Fire did not preserve error on its claims involving Maxwell. The question whether she had authority to appoint a reviewer calls for an interpretation of agency rules, a matter within the agency's sound discretion. *See Young*, 867 N.W.2d at 842. Because United Fire did not object to Maxwell's involvement during the 10.3 review or the contested case proceeding, the agency had no chance to weigh in on the proper interpretation of its own rules. United Fire first raised claims concerning Maxwell before the district court. The judicial review hearing was too late to flag these new concerns. *See KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 329 (Iowa 2010).

As for standing and accord and satisfaction, we are skeptical whether United Fire properly preserved error on those legal issues through the informal-dispute-resolution process. But because United Fire presented the issues before the agency and obtained a substantive determination, we opt to reach those issues here. *See generally State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (noting serious preservation problems but proceeding to address merits).

**IV. Analysis**

**A. Did procedural errors prejudice United Fire?**

United Fire argues it was prejudiced by several alleged procedural errors in the 10.3 review and contested case proceeding. United Fire attacks the agency's retention of Kauffman, its refusal to allow United Fire to submit evidence related to legal issues, and its acceptance of late filings from Cedars-Sinai and Sequetor. We address each argument in turn.

**Conflict of Interest.** United Fire contends the agency should have dismissed Kauffman due to a conflict of interest.[5] *See Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 848 (Iowa 2009) (noting "[d]ue process always involves . . . a constitutional floor of a 'fair trial in a fair tribunal'" (citation omitted)). United Fire highlights three facts to illuminate the alleged conflict. First, Kauffman worked for Cedars-Sinai from 1990 to 1997. Second, at the time he performed the 10.3 review, Kauffman was contracting with a collections agency that provided services to Cedars-Sinai. Third, language in Kauffman's opinion suggests a lack of objectivity, particularly the designation of "witness for the lien claimant" typed under his signature.

Cedars-Sinai and Sequetor respond Kauffman's relationship with the hospital twenty years ago should not disqualify him from acting as a reviewer. They also point to his affidavit, which denies a direct relationship with Cedars-Sinai. They dismiss United Fire's complaints about the objectivity of Kauffman's opinion, noting: "It seems quite clear that Kauffman either used a form or made a couple of clerical errors during the preparation of his report." Moreover, they contend the substance of Kauffman's report, such as his consideration of United Fire's "preferred medical bill calculation," demonstrates Kauffman understood his role as independent reviewer.

---

[5] In its appellant's brief, United Fire claims ex parte communications between Kauffman and Sequetor also should have been grounds for his dismissal. In its reply brief, United Fire "concedes rule 876-10.3 does not contain an express prohibition of ex parte communications" but adds: "[T]he rule does state the review is to consider information provided by *both* parties." United Fire then contends Kauffman did not consider the information it provided him. Because United Fire abandons its argument regarding ex parte communications in its reply brief, we decline to address it. We also decline to address the argument raised for the first time in its reply brief that Kauffman did not consider the information United Fire provided. *See Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 366 n.2 (Iowa 2007).

Our review of the record does not reveal a conflict of interest. While Kauffman performed collections work for Cedars-Sinai in the past, he no longer had any direct involvement with the hospital when he performed the 10.3 review. In addition, Kauffman had a history of performing reviews for both lien claimants and defendants, as well as acting as an independent bill reviewer. Although the signature line of Kauffman's opinion indicates he was a witness for Cedars-Sinai, that misdesignation can be explained as a clerical error, particularly considering Kauffman's signed "Independent Bill Review Affidavit," in which Kauffman declares "non-association with the parties and/or collection agents in this case." Further, the substance of Kauffman's report does not suggest he misunderstood his role but, rather, demonstrates an objective analysis of three methods for determining a reasonable medical fee. Accordingly, Deputy Christenson did not commit procedural error in retaining Kauffman as the reviewer.

**Resolution of Legal Questions.** United Fire next alleges the agency violated its right to procedural due process by refusing—within the informal-dispute-resolution process—to allow the insurer to submit evidence and brief several legal questions listed in the insurer's August 15, 2012 letter. United Fire complains its ability to litigate these questions was stymied because Iowa Administrative Code rule 876-4.46 allows only the evidence and issues submitted during the rule 10.3 process to be considered in the contested case proceeding.[6]

United Fire did not preserve error on a claim of procedural due process. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000)

---

[6] It was not until oral argument that United Fire formulated an argument challenging the constitutionality of the agency rules. We decline to consider this newly raised argument. *See Dilley v. City of Des Moines*, 247 N.W.2d 187, 195 (Iowa 1976).

(holding appellate court may consider error preservation on its own motion). The insurer did not allege a denial of due process during the pendency of the rule 10.3 review, nor did it raise that claim in the contested case proceeding. And even assuming United Fire has preserved error, we disagree with its assertion due process requires parties who dispute a medical fee be allowed to present testimony and legal argument in the context of the 10.3 review.

The "full panoply" of procedural due process rights is not necessary for an administrative hearing to pass constitutional muster. *See Baker v. Emp't Appeal Bd.*, 551 N.W.2d 646, 648 (Iowa Ct. App. 1996). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The hearing before Deputy Christenson was a contested case governed by chapter 17A, which contains provisions ensuring parties are afforded due process. *See Mauk v. State Dep't of Human Servs.*, 617 N.W.2d 909, 912–13 (Iowa 2000); *see also* Iowa Admin. Code r. 876-4.46(2). Section 17A.12(4) mandates in a contested case proceeding, "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved."

Before a provider or responsible party with a medical-fee dispute may initiate a contested case, that party must follow the informal-dispute-resolution procedure in rule 10.3. *See* Iowa Admin. Code rr. 876-10.3(1), -4.46(2). The appointed reviewer considers information from the parties and determines "the amount that is reasonable and necessary." Iowa Admin. Code r. 876-10.3(3)(d)–(e). If the 10.3 proceedings do not resolve the matter, the aggrieved party may initiate a contested case proceeding. Iowa Admin. Code

r. 876-4.46(2). But the parties may not submit additional evidence in the contested case proceeding unless "there exists additional material evidence, newly discovered, which could not with reasonable diligence be discovered and produced." Iowa Admin. Code r. 876-4.46(3). Moreover, the issues in the contested case are "limited to the dispute considered in rule 876-10.3." *Id.*

Soon after Sequetor initiated the 10.3 review, United Fire sent a letter to the agency requesting deadlines for the informal-dispute-resolution proceedings. United Fire asserted the 10.3 review invoked "complex legal questions"—including jurisdiction, notice, statute of limitations, and choice of law—which would "take substantial preparation time" for the parties. In response to reviewer Stamp's qualms about addressing those legal questions, Commissioner Godfrey opined such issues fell outside the 10.3 review. Consistent with Godfrey's position, after Kauffman's appointment, Deputy Christenson denied United Fire's request to present testimony and limited the information United Fire could submit to "objective materials regarding the billing in this matter," reasoning Kauffman was "an expert reviewer," not "a finder of fact." In the contested case proceeding, United Fire resurrected one legal question from its August 15, 2012 letter—standing—as well as the issue of accord and satisfaction—raised in its December 14, 2012 motion. But United Fire did not present argument on the other legal issues or contest the agency's limitation on evidence it was allowed to submit to Kauffman.

As both parties have recognized, the case law discussing informal resolution of medical-fee disputes under rule 10.3 is negligible. Further, the facts of this case do not fit neatly within the plain language of that rule. Against that

backdrop, it is not surprising the parties present two fundamentally different positions on how the 10.3 review should have proceeded here.

United Fire asserts it should have had the opportunity to present its legal arguments and corresponding evidence to the 10.3 reviewer. In support of this assertion, United Fire characterizes the scope of the medical-fee dispute broadly, noting: "The reasonableness of the charges submitted by Cedars-Sinai inevitably depends on resolution of the legal issues raised by United Fire in its August 15, 2012 letter." According to United Fire, regardless of whether Kauffman was qualified to evaluate legal arguments, the agency should have allowed the insurer to present them to the reviewer because, under rule 4.46(3), that was the only way United Fire could preserve the issues for the contested case proceeding.

Cedars-Sinai and Sequetor advocate a narrower scope for a medical-fee dispute, contending the reviewer was limited to deciding the reasonable value of services the hospital rendered. They contend it would have been inappropriate for Kauffman—who was an expert in medical billing, not the law—to consider legal issues. Under their interpretation, the collateral legal questions raised by United Fire could not be resolved in the rule 10.3 review, contested case, or judicial review proceeding.[7]

---

[7] At oral argument, Cedars-Sinai and Sequetor clarified that their interpretation did not completely preclude United Fire from seeking resolution of its legal claims. Their counsel suggested it may have been appropriate for United Fire to file a petition for a declaratory order. Iowa Code section 17A.9 and Iowa Rule of Administrative Procedure 876-5.1 present a possible avenue for requesting an agency determination on the proper procedure for resolving legal claims related to a medical-fee dispute.

The interpretation advanced by Cedars-Sinai and Sequetor more clearly reflects the language of the statute and rules. The informal dispute resolution is intended to settle disagreements over the necessity of services or reasonableness of charges. Iowa Admin. Code r. 876-10.3(2). The task of a reviewer is to determine the necessity of services, or in this case, the reasonableness of the hospital charges. Iowa Admin. Code r. 876-10.3(3). We defer to the agency's view that the 10.3 reviewer's task does not extend to resolving the legal issues presented by United Fire.[8] *See Young*, 867 N.W.2d at 842. Indeed, allowing the parties to present legal arguments to a reviewer who isn't equipped to evaluate those claims would create confusion and uncertainty regarding the reviewer's fee determination.[9] Accordingly, we affirm on this ground.

**Amended Filings.** United Fire also contends Deputy Christenson gave Cedars-Sinai and Sequetor an unfair advantage by allowing them to submit an untimely answer and amended brief. United Fire initiated the contested case proceeding on March 14, 2014. Under rules 4.46(5) and (6), Cedars-Sinai and Sequetor were required to submit their response and brief within thirty days of the date of service of the request for contested case proceeding. Adhering to

---

[8] We recognize a situation could arise in which the *agency* would need to determine a legal issue related to the construction or applicability of rule 10.3 to comport with due process.

[9] Even under this more restrictive view, we cannot conclude the agency denied United Fire a meaningful opportunity to be heard. United Fire took no steps to have its legal questions resolved outside the informal-dispute-resolution process nor did the insurer attempt to opt out of the rule 10.3 review. Rather, United Fire acquiesced in the process. While United Fire filed a motion in December 2012 asking the agency to resolve a number of the legal questions, after the agency rejected that filing because there was no original notice or petition on file, United Fire took no steps to appeal or otherwise secure a ruling from the agency on those issues.

this timeframe, on March 31, Sequetor and Cedars-Sinai filed a "rebuttal" through a representative not licensed to practice law in Iowa.

United Fire argued Cedars-Sinai and Sequetor needed to obtain counsel and amend their response to conform to the rules. On May 16, counsel appeared for Sequetor and Cedars-Sinai and requested a thirty-day stay, which the agency granted. Twenty days after the expiration of the stay, on July 11, Sequetor and Cedars-Sinai filed an answer and amended brief. United Fire moved to strike those filings. Deputy Christenson denied the motion to strike, characterizing the answer and brief as amended filings that related back to the timely filed rebuttal. The deputy reasoned amendment to a pleading should be freely granted and found the amendments did not prejudice United Fire. *See* Iowa Admin. Code r. 876-4.9(5).

United Fire challenges the deputy's characterization of the brief as a pleading and asserts the deputy's allowance of the amendment conflicts with the requirement under rule 4.46(8) that the commissioner review the contested case sixty days after it is filed. United Fire further argues it was prejudiced by the amended filings because they "addressed additional legal arguments not included in their original brief."

Like the district court, we conclude the agency did not abuse its discretion in allowing the additional filings. The answer was an amended pleading, and as Deputy Christenson reasoned, amendments to pleadings should be freely granted when it is just to do so. *See Estate of Kuhns v. Marco*, 620 N.W.2d 488, 491 (Iowa 2000). While we agree with United Fire that a brief is not a pleading, that distinction does not mean a party may never amend a brief. United Fire

does not cite authority for its proposition that a party may not amend a brief, nor does United Fire specify how it was unfairly prejudiced by the allowance of the additional filings. Accordingly, we decline to grant relief on this basis.[10]

**B.    Did Sequetor have standing to initiate the 10.3 review?**

United Fire argues Sequetor could not initiate a 10.3 review because it is not a "provider" within the meaning of Iowa Administrative Code rule 876-10.3(2). Iowa Code section 85.27(3) authorizes the workers' compensation commissioner to establish rules to resolve medical-fee disputes between employers, insurance carriers, and health service providers. In accordance with the statute, the commissioner enacted rule 10.3, which allows a provider or a party liable for payment of medical services to submit the dispute for review. *See generally* Iowa Admin. Code r. 876-10.3. Rule 10.3(2) defines "provider" as "any person furnishing surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance, hospital services and supplies, crutches, artificial members and appliances." Deputy Christenson concluded Sequetor was an agent of provider Cedars-Sinai, and accordingly, Sequetor had standing to initiate the 10.3 review.

We find no error in the agency's decision Sequetor had authority to initiate informal dispute resolution proceedings under rule 10.3.[11]    Cedars-Sinai, a

---

[10] United Fire also argues the agency gave Cedars-Sinai and Sequetor an unfair advantage when it allowed them to submit additional evidence in the contested case proceeding related to United Fire's claims of standing and accord and satisfaction. Because resolution of the standing issue hinges on the proper construction of rule 10.3 rather than an evidentiary issue, we find any error in allowing additional evidence was harmless. Similarly, as the agency did in the contested case proceeding, we can resolve United Fire's accord-and-satisfaction claim without reference to the additional evidence. Therefore, we find no reversible error. *See Mohammed v. Otoadese*, 738 N.W.2d 628, 633 (Iowa 2007) ("[T]he erroneous admission of evidence does not require reversal 'unless a substantial right of the party is affected.'" (quoting Iowa R. Evid. 5.103(a))).

provider within the meaning of rule 10.3(2), authorized Sequetor to act on its behalf in resolving the fee dispute. The agency's interpretation of the term "provider" as including an agent of a provider was reasonable. Moreover, United Fire does not claim to have suffered any prejudice by Sequetor initiating the 10.3 review instead of Cedars-Sinai.

## C.      Did United Fire prove accord and satisfaction?

United Fire next argues it has demonstrated accord and satisfaction, which prevents Cedars-Sinai and Sequetor from seeking additional payment. Accord and satisfaction discharges a claim when "the parties agree to give and accept something in settlement of the claim and perform the agreement." *Robinson v. Norwest Bank, Cedar Falls, N.A.*, 434 N.W.2d 128, 130 (Iowa Ct. App. 1988). Iowa Code section 554.3311, which codifies this principle, provides in relevant part:

---

[11] United Fire acknowledges no case law in Iowa addresses a collection agency's ability to participate in a fee-dispute proceeding but cites to a Texas case finding a contractual assignee of a healthcare provider was not a proper party in a workers' compensation dispute. *Tex. Mut. Ins. Co. v. Apollo Enters.*, No. 03-09-00054-CV, 2009 WL 3486380, at *3 (Tex. Ct. App. Oct. 29, 2009). In *Apollo Enterprises*, the workers' compensation division interpreted a similarly worded definition of provider to exclude assignees. *Id.* at *2. In upholding that decision, the court cited policy reasons for excluding assignees, including that Apollo bought medical debt from the provider at a reduced rate: "[C]ompanies that pay a reduced fee to healthcare providers and bill the system at a higher rate 'increase[] costs to the system without adding value to the system.'" *Id.* at *5 (citation omitted). The court continued: "In any event, we need not speculate as to what the Division's motivation was, because after concluding that the Division's interpretation of its own rule is not contrary to statute, nor contrary to the plain meaning of the rule, nor plainly erroneous, we defer to the Division's interpretation." *Id.*

We find this case to be readily distinguishable. First, Sequetor did not purchase the debt from Cedars-Sinai. Instead, Sequetor was assisting Cedars-Sinai with its debt collection. United Fire does not argue Sequetor's practices would increase the costs to the system. Accordingly, the policy concerns of the Texas court are not applicable. Perhaps more importantly, in the Texas case, the workers' compensation division construed its rule differently, and the court deferred to that interpretation. We find it appropriate to afford the interpretation of our own workers' compensation division the same deference.

  1. If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, the amount of the claim was unliquidated or subject to a bona fide dispute, and the claimant obtained payment of the instrument, the following subsections apply.

  . . . .

  4. A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

In support of its claim,[12] United Fire points to the lack of communication from Cedars-Sinai for more than a year after United Fire's initial $939,455 payment and the following notation from November 30, 2011, in an account history report: "Add'l pmt posted to acct in the amt of $740.78. . . . Pmt is 20% of fee schedule reimb as required . . . . No add'l charges required to be pd."

United Fire has not demonstrated an accord and satisfaction. As Deputy Christenson observed: "There is no indication in the record that Sequetor or Cedars-Sinai knew that the check for $939,455.03 was tendered in full satisfaction of the bills at issue." Neither the lack of communication nor the account-history notation is adequate to prove accord and satisfaction under section 554.3311(4). That subsection requires knowledge the check was being tendered in full satisfaction of the claim *before* the hospital sought collection.

---

[12] In its brief, United Fire also argued it demonstrated accord and satisfaction under section 554.3311(2), which provides "the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." But at oral argument, United Fire conceded the checks it sent to Cedars-Sinai did not include a "conspicuous statement" they were tendered in full satisfaction of Cedars-Sinai's claim. United Fire also agreed it did not submit to the agency any written communication that accompanied the checks containing such a conspicuous statement. Accordingly, we limit our analysis to subsection (4).

Neither the lack of communication nor the relevant note, written more than one year after the initial payment and weeks after the second payment, shows the hospital had such knowledge before seeking payment of the check.[13]

**D.    Is the medical-fee decision irrational and illogical?**

Finally, United Fire argues the medical-fee decision was irrational and illogical because Kauffman's opinion was incorrect under California law.  United Fire contends: "Kauffman's opinion indicates he decided the reasonableness of the charges under California law," but the methodology he employed—averaging three different calculations—is not proper under that state's regulatory scheme. Thus, according to United Fire, Kauffman's opinion is not reasonable, and the agency endorsement of his opinion was irrational and illogical.

Cedars-Sinai and Sequetor respond that Iowa law, not California law, governs the reasonableness of the medical fee.  Rule 10.3 does not specify the methodology a bill reviewer must undertake.  *See* Iowa Admin. Code r. 876-10.3(3)(e) ("[The determination] shall be in writing and specify the facts relied upon.  The person making the review may choose any amount to set the reasonableness of a charge.").  They argue Kauffman's methodology was sound considering the urgency of Mills's injury and the extraordinary circumstances surrounding his long hospitalization.

---

[13] Alternatively, United Fire contends it was denied the opportunity to fully present its defense of accord and satisfaction because the agency allowed only "objective" evidence.  United Fire provided the reviewer with copies of the checks it had issued to Cedars-Sinai as well as collection notes.  At oral argument, United Fire conceded there was no "conspicuous statement" on its payments and identified no other evidence it could have presented to the agency.

Kauffman's review discussed three methodologies for determining a reasonable payment. First, Kauffman examined the analysis used by Alpha Review that resulted in United Fire's payment of $939,455.03. Kauffman indicated this methodology was based upon a DRG (Diagnosis Related Group) analysis[14] representing an average length of stay of 31.6 days. But Mills "was treated for 131 days leaving 99.4 days of medical services for which reimbursement appears to be missing from the defendant's payment for the medical services provided by Cedars Sinai." Kauffman also faulted this methodology because it did not take into consideration Mills's trauma designation or his "need of intensive inpatient care." Because of this, Kauffman looked at another method based upon a per diem rate,[15] which he advised would have been proper under California law. Under this second method, the payment would have totaled $3,894,576.10. Finally, Kauffman offered a third approach based upon an evidentiary study from 2009 prepared for the California commission on health, safety and workers' compensation. Kauffman opined that according to that study, "the average reimbursement rate for the services provided for the same or similar services are *exempt* from the inpatient fee schedule and are to

---

[14] According to California Code of Regulations section 9789.21(j), DRG is "the inpatient classification scheme used by CMS [Centers for Medicare & Medicaid Services] for hospital inpatient reimbursement. The DRG system classifies patients based on principal diagnosis, surgical procedure, age, presence of comorbidities and complications and other pertinent date."

[15] Under California Code of Regulations section 9789.22(j)(1): "The per diem rate is determined by dividing the maximum reimbursement as determined under Section 9789.22(1) by the average length of stay . . . for that specific DRG." Kauffman divided Mills's DRG-analysis amount ($939,455.03) by the average length of stay (31.6 days) to get a per diem rate of $29,729.59. He multiplied that rate by the length of Mills's actual stay (131 days) to arrive at $3,894,576.10.

be reimbursed at *90% of billed charges.*"[16]  Under this method, the total payment would have been $4,782,601.70.  Kauffman concluded Cedars-Sinai "can analogize from the reasoning described in this analysis and should be reimbursed the calculated average of the methodologies discussed."

We find the medical-fee determination neither irrational nor illogical. Under rule 10.3(3)(e), the reviewer has considerable discretion in choosing a methodology.  The rule requires the fee determination "be in writing and specify the facts relied upon" but apart from that "[t]he person making the review may choose any amount to set the reasonableness of a charge."  Iowa Admin. Code r. 876-10.3(3)(e).  Regardless whether Kauffman's approach followed California law, his determination—which employed three coherent methodologies for determining a reasonable medical fee—fit logically within the expansive language of rule 10.3.

Accordingly, we affirm the judicial review decision.

**AFFIRMED.**

---

[16] This approach comes from a section in the study describing the limitations in its approach to estimating the impact of new OMFS provisions:

> To estimate the impact of the SB 228 OMFS provisions, the maximum allowable fees using the OMFS rates in effect when the patient was discharged from the hospital were first determined. . . .  Any hospital for which a composite rate did not exist in 2003 was assumed to be OMFS-exempt.  This includes both new acute care hospitals and specialty hospitals that are exempt from the Medicare PPS for general acute care hospitals.  For hospitals and DRGs that were exempt from the OMFS [in 2003], payment was assumed to be [ninety] percent of charges. There are several limitations to this approach.

Barbara O. Wynn, *Inpatient Hospital Services: An Update on Services Provided Under California's Workers' Compensation Program* (RAND Ctr. for Health & Safety in the Workplace, Working Paper No. WR-629-CHSWC, 2009).